No. 23-1449

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ROBERT SYLVESTER KELLY

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION
Case No. 1:19 CR 00567
The Honorable Judge Harry D. Leinenweber

BRIEF AND REQUIRED SHORT APPENDIX FOR
DEFENDANT-APPELLANT ROBERT SYLVESTER KELLY

JENNIFER BONJEAN
ASHLEY COHEN
BONJEAN LAW GROUP, PLLC
750 Lexington Avenue, 9th Floor
New York, NY 10022
(718) 875-1850

Chicago Office:
BONJEAN LAW GROUP, PLLC
53 W. Jackson, Blvd. Ste. 315
Chicago Illinois 60604

*Attorney(s) for Defendant-Appellant*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __23-1449__

Short Caption: __USA v. Robert Kelly__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
__Appellant Robert Kelly__

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
__Bonjean Law Group__

_____

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

_____

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

_____

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: __/s/ JENNIFER BONJEAN__                    Date: __03/22/2023__

Attorney's Printed Name: __Jennifer Bonjean__

Please indicate if you are _Counsel of Record_ for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✔]     **No** [ ]

Address: __750 Lexington Avenue, 9th Floor, NY, NY 10022__

_____

Phone Number: __718-875-1850__                    Fax Number: __914-463-3483__

E-Mail Address: __Jennifer@Bonjeanlaw.com__

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1449

Short Caption: USA v. Robert Kelly

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Robert Kelly

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bonjean Law Group

(3)   If the party, amicus or intervenor is a corporation:

i)   Identify all its parent corporations, if any; and

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ ASHLEY COHEN     Date: 03/22/2023

Attorney's Printed Name: Ashley Cohen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 750 Lexington Avenue, 9th Floor, NY, NY 10022

Phone Number: 718-875-1850     Fax Number: 914-463-3483

E-Mail Address: Ashley@bonjeanlaw.com

rev. 12/19 AK

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**............................................................. ii

**JURISDICTIONAL STATEMENT**................................................. 1

**STATEMENT OF THE ISSUES**..................................................... 2

**STATEMENT OF THE CASE**......................................................... 3

    A.    Evidence Related to Jane................................................... 4

    B.    Evidence Related to Nia.................................................... 6

    C.    Evidence Related to Pauline.............................................. 8

**SUMMARY OF ARGUMENT**........................................................ 10

**ARGUMENT**

  I.    Defendant's Convictions for Sexual Exploitation and Inducement of a Child Must Be Reversed Where the Charges Were Brought Outside the Applicable Statute of Limitations............................................. 12

  II.   The Trial Court Abused Its Discretion When It Denied Defendant's Motion to Sever the Inducement Counts (Counts Ten through Thirteen) from the Child Pornography Counts Related to Jane (Counts One through Three). ...................................................................... 19

 III.   Defendant's 240-Month Above-Guidelines Sentence Was Both Procedurally and Substantively Improper........................................ 24

**CONCLUSION**............................................................................. 31

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)** ............................................................. 32

**CERTIFICATE OF COMPLIANCE WITH CIR. R. 30(a)&(b)**................. 33

**CERTIFICATE OF SERVICE**......................................................... 34

## TABLE OF AUTHORITIES

**Cases**

*Appalachian Power Co. v. E.P.A,* 249 F. 3d 1032 (D.C. 2001)....................................15

*Baker v. United States,* 401 F.2d 958 (D.C. Cir. 1968) ...............................................21

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)............................................14

*Cross v. United States,* 335 F. 2d 987 (D.C. Cir. 1964) .............................................21

*Food and Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000)........................................................................................16

*Gall v. United States,* 552 U.S. 38 (2007) .................................................................24

*Gregory v. United States,* 125 U.S. App. D.C. 140, 369 F.2d 185 (D.C. Cir. 1966)....20

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)................................................14

*Lattab v. Ashcroft*, 384 F. 3d 8 (1st Cir. 2004) ..........................................................16

*Martin v. Hadix*, 527 U.S. 343 (1999)........................................................................16

*Martin v. Hunter's Lessee,* 14 U.S. 304 (1816) ..........................................................15

*Peugh v. United States,* 569 U.S. 530 (2013) .............................................................28

*Salahuddin v. Mean,* 174 F. 3d 271 (2d Cir. 1999) ....................................................15

*Stogner v. California*, 539 U.S. 607 (2003) ................................................................17

*Toussie v. United States*, 397 U.S. 112 (1970)......................................................14, 17

*United States v. Alverado,* 1994 U.S. Dist. LEXIS 17062 .........................................20

*United States v. Archer*, 843 F.2d 1019 (7th Cir. 1988).............................................21

*United States v. Ballard,* 950 F. 3d 434 (7th Cir. 2020) ............................................24

*United States v. Brown,* 892 F. 3d 385 (D.C. Cir 2018) .............................................27

*United States v. Canania,* 52 F. 3d 764 (8th Cir. 2008).............................................28

*United States v. Castillo,* 695 F. 3d 672 (7th Cir. 2012) ............................................... 26

*United States v. Coe,* 220 F. 3d 573 (7th Cir. 2000) ..................................................... 28

*United States v. Coleman,* 22 F. 3d 126 (7th Cir. 1994) .............................................. 22

*United States v. Conaway,* 713 F. 3d 897 (7th Cir. 2013) ............................................ 26

*United States v. Diehl*, 775 F. 3d 714 (5th Cir. 2015) ................................................. 13

*United States v. Ely*, 910 F.2d 455 (7th Cir. 1990) ...................................................... 21

*United States v. Foutz,* 540 F.2d 733 (4th Cir. 1976) ................................................... 20

*United States v. Gentile*, 235 F. Supp. 3d 649 (D.N.J. 2017) ...................................... 17

*United States v. Gibson,* 490 F. 3d 604 (7th Cir. 2007) ............................................... 17

*United States v. Miller,* 601 F. 3d 734 (7th Cir. 2010) ................................................. 26

*United States v. Miller*, 911 F. 3d 638 (1st Cir. 2018) ................................................. 17

*United States v. O'Brien,* 953 F. 3d 449 (7th Cir. 2020) .............................................. 12

*United States v. Ragghianti,* 527 F.2d 586 (9th Cir. 1975) ......................................... 20

*United States v. Rivera-Ventura*, 72 F. 3d 277 (2d Cir. 1995) ..................................... 18

*United States v. Smith,* 308 F. 3d 726 (7th Cir. 2002) ................................................. 19

*United States v. Werner* (2d Cir. 1980) 620 F.2d 922 ................................................. 19

*Velásquez-Garcia v. Holder*, 760 F. 3d 571 (7th Cir. 2014) ....................................... 14

**Statutes**

18 U.S.C.  2251(a) ..................................................................................................... 5, 7

18 U.S.C. § 2251(a) ......................................................................................................... 7

18 U.S.C. § 2422(b) ................................................................................................... 5, 23

18 U.S.C. § 3231 .................................................................................. 5

18 U.S.C. § 3282(a) ........................................................................... 16

18 U.S.C. § 3283 ................................................................. 16, 17, 19

18 U.S.C. § 3553(a) .......................................................................... 29

18 U.S.C. § 371 .................................................................................. 5

18 U.S.C. § 3742 ................................................................................ 5

18 U.S.C. §§ 2252(a)(2) ..................................................................... 5

18 U.S.C. §§ 2252(b)(1) ..................................................................... 5

28 U.S.C. § 1291 ................................................................................ 5

## Other Authorities

Amber Legislation, Cong. Rec. 149:50, S5147 (2003) .................................................. 20

Child Abduction Prevention Act, H.R. 1104, 108th Cong. § 202 (2003) .................... 20

## JURISDICTIONAL STATEMENT

The jurisdiction of the United States District Court for the Northern District of Illinois was found upon 18 U.S.C. § 3231. A grand jury sitting in the Northern District of Illinois charged the Defendant by way of indictment with four counts of child exploitation in violation of 18 U.S.C. § 2251(a); one count of conspiracy to obstruct justice in violation of 18 U.S.C. § 371; three counts of conspiring and receiving child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and four counts of child exploitation in violation of 18 U.S.C. § 2422(b). [Dkt. No. 93]

The jurisdiction of the United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742. A jury returned a verdict finding Defendant guilty of three counts of 18 U.S.C. § 2251(a) and three counts of 18 U.S.C. § 2422(b) on September 14, 2022. [Dkt No. 335] Defendant's post-trial motions were timely filed on November 15, 2022. [Dkt. Nos. 387 & 388] The post-trial motions were denied on February 16, 2023. [Dkt. No. 416] Defendant was sentenced on March 7, 2023. [Dkt No. 428]

The judgment and conviction was entered on March 7, 2023. [Dkt. No. 428] A notice of appeal was filed on March 9, 2023. [Dkt. No. 431]

## STATEMENT OF THE ISSUES FOR REVIEW

1.     Whether Defendant's convictions for sexual exploitation and inducement of a child must be reversed where the charges were brought outside the applicable statute of limitations.

2.     Whether the District Court abused its discretion when it denied Defendant's motion to sever the inducement counts related to Nia and Pauline from the child pornography counts related to Jane.

3.     Whether the Defendant's 240-month above-guidelines range sentence was both procedurally and substantively improper.

## STATEMENT OF THE CASE

On February 13, 2020, the government filed a 13-count superseding indictment charging Defendant Kelly with (1) four counts of violating 18 U.S.C. § 2251(a) ("the child pornography counts"); (2) one count of conspiracy to obstruct justice in connection with his 2008 state-court acquittal; (3) three counts of violating 18 U.S.C. § 18 U.S.C. 2252(A) related to receiving the aforementioned child pornography; and (4) five counts of violating 18 U.S.C. § 2422(b) ("the inducement counts") [Dkt. No. 93] Kelly's co-defendants, Derrel McDavid and Milton Brown, were charged in connection with obstruction of justice and receipt of child pornography.

 After a four-week jury trial, the jury returned a guilty verdict against Defendant as to three of the child pornography counts and three inducement counts. Defendant was acquitted as to the remaining counts. McDavid and Brown were both acquitted of all counts. [Dkt. No. 335]

The charges for which Defendant was convicted (counts one through three and nine) related primarily to minor 1 who used the pseudonym "Jane" at trial. One inducement count (count ten) related to minor 3 who used the pseudonym "Nia" at trial, and one inducement count (count twelve) related to minor 5 who used the pseudonym "Pauline" at trial.[1]

---

[1] Defendant will refer to minor 5 as "Pauline" but advises this Court that minor 5 initially used her nickname as her pseudonym which also started with the letter "P;" she later decided that she did not wish to use her nickname so the pseudonym changed after the trial commenced.

3

The superseding indictment in the case largely charged Defendant with conduct from the mid to late 1990s. Prior to trial, Defendant moved to dismiss all counts related to sexual exploitation of a child on statute of limitations grounds. [Dkt. No. 189] Defendant also moved pretrial to sever the counts related to Jane from the remaining inducement counts where the evidence in connection with child exploitation of Jane, including video recordings of the prohibited sexual activity, was significantly stronger than the evidence related to the remaining inducement counts. [Dkt. No. 196]

The District Court denied both motions. [Dkt. No. 222]

## A.    Evidence Related to Jane

Jane testified that she was born in September 1984 and was raised in Oak Park, Illinois. (R. 700) When Jane was a junior in high school, she started being home schooled because she was performing in a musical group with other members of her family. (R. 702) Her entire family was involved in the music industry. (R. 702)

Jane was introduced to the Defendant through her aunt Stephanie ("Sparkle") who was a singer who had collaborated with the Defendant. (R. 707; 715) The Defendant and "Sparkle" also had a romantic relationship. (R. 715) When Jane was 13 or 14 years old, she would hang out at the Defendant's recording studio with her aunt. (R. 716) Jane explained that she would go to the studio and watch Defendant record with her aunt and it was nice to see them working and producing music. (R. 725)

"Sparkle" began encouraging Jane to foster a "closer" relationship with the Defendant. (R. 726) According to Jane, "Sparkle" told her to ask Defendant to be her "godfather" and instructed her to sit on his lap and rub his head. (R. 726) Jane wanted to have a closer relationship with the Defendant and did what her aunt advised, asking Defendant to be her "godfather." The Defendant agreed. (R. 727) Jane told her parents that the Defendant agreed to be her godfather and they were pleased. (R. 727)

Jane testified that her relationship and conversations with the Defendant began to change, becoming more sexual and leading to "phone sex." (R. 729-730) When Jane was 14, she and the Defendant began to engage in sexual contact. (R. 731; 739) The sexual contact involved touching and rubbing each other's genitalia, oral sex, and kissing and hugging. (R 736). These occasions were frequent and occurred at Defendant's studio, his home, and on his tour bus. (R. 733; 739) Jane's parents allowed her to stay with the Defendant, including overnight. (R. 733) After Jane turned 15, she and the Defendant started to have sexual intercourse. (R. 736)

Defendant started video-recording his sexual activities with Jane when she was 14 years old. (R. 766; 771) Jane testified that prior to taking the stand, she viewed video footage of three separate sexual encounters with the Defendant, one occurred in the living room of his home, one occurred in his bedroom, and one occurred in a room referred to as the "log cabin" room in Defendant's home. (R. 767-68) The videos depicted touching and oral sex but did not involve sexual intercourse. (R. 773) Jane testified that she was 14 years old in all three videos that she

identified. (R. 771; 778) The three videos were introduced into evidence as Government's Exhibits 1 and 2; one of the videos was captured on Government's Exhibit 1 and the two of the videos were captured on Government's Exhibit 2. (R. 773; 779) The three videos formed the basis of counts one through three of the superseding indictment.

### B.    Evidence Related to Nia

Nia testified that she met Defendant in a shopping mall in Atlanta in 1996 when she was 15 years old. (R. 2584) Nia was born in August of 1980. (R. 2583) Nia obtained an autograph from the Defendant on which he allegedly wrote down his phone number. (R. 2585) Nia admitted that she did not discuss her age with the Defendant, and she no longer had the autograph he gave her. (R. 2619)

Nia testified that the Defendant asked her if she was going to his concert in Atlanta that evening. When she told the Defendant she did not have tickets, Defendant arranged for her to obtain tickets. (R. 2585) Nia did not attend the Defendant's concert but began calling the Defendant that evening. (R. 2586-87) Nia explained that she had several conversations with the Defendant and that she liked him. According to Nia, the Defendant arranged for her to travel to Minnesota to attend his concert. (R. 2591) Nia attended the Defendant's concert but did not see him until the following morning in her hotel room. (R. 2598) Nia testified that Defendant kissed her, touched and kissed her breasts, and then masturbated. (R. 2602) Defendant told her that he wanted her to visit him in Chicago. (R. 2602)

Defendant did not follow up on the invitation and did not book any arrangements for Nia to come to Chicago. (R. 2605) However, Nia made her own arrangements and went to stay with family in Chicago the summer on 1996 - unbeknownst to the Defendant. (R. 2605; 2635) Once in Chicago, Nia called the Defendant; he invited her to his studio but made no arrangements for her to come there. Nia convinced her cousins to take her to the studio. (R. 2606)

Nia arrived at the studio with her cousins and Defendant showed them around and took them to a waiting area where they could see him record. Nia and her cousins stayed most of the evening but Defendant was recording and was not hanging out with Nia and her cousins for most of the evening. (R.2610) At some point, Nia was told Defendant wanted to talk to her in the hallway and Nia went into the hallway to see him. Nia testified, "he greeted me with a hug, with a kiss, and held on to her for a moment" and they "kind of made out a little." (R. 2611) Nia elaborated, "I remember his hand being around my waist on my bottom, my butt. And then he motioned his hands into my pants as we kissed. And he fondled my chest, and he, you know, kissed we just kind of made out within the time frame that we were in the hallway." (R. 2612) Nia stated, "he touched my vagina and he caressed my bottom, my behind." (R. 2612) Nia testified that before she left, she had a second encounter with Defendant. She stated they "embraced, hugged. He held on to me, held my bottom and things of that nature but it wasn't as long as the first on. It was more of like, you know, kind of, like a good-bye, see you later." (R. 2613)

Nia never saw or spoke to the Defendant again. But in 2002, Nia sued the Defendant and the case settled for $500,000. (R. 2615; 2617)

## C.    Evidence Related to Pauline

Pauline testified that she was born in October 1984 and grew up in Oak Park, Illinois with Jane. (R. 2288-89) Pauline and Jane became friends in middle school. (R. 2289) Pauline met the Defendant through Jane when she was 14 years. (R. 2289) Pauline explained that when she was 14 or 15 years old, she discovered Jane and the Defendant in the "log cabin" room; Jane was naked. (R. 2292)

Pauline testified that she had her first sexual encounter with the Defendant when she was 14. (R. 2295) She began having sexual encounters with both the Defendant and Jane which included oral sex. (R. 2296-97) Pauline eventually began having sexual intercourse with the Defendant when she was around 15 or 16. (R. 2297) When Jane discovered Pauline was having a separate sexual relationship with Defendant, it became very problematic for their friendship. (R. 2306)

Pauline admitted that she continued to have a sexual relationship with the Defendant until she was grown and was out of college. (R. 2316) Pauline did not report to any authorities that she had a sexual relationship with the Defendant when she was a minor until 2019.

The government presented lengthy excerpts of the video recordings depicting Defendant's sexual conduct with Jane on three separate occasions. Much of the government's case centered on the Defendants' alleged efforts to obstruct the state court prosecution of Defendant in connection with one of the videos depicting his

sexual conduct with Jane in 2008. The jury acquitted all Defendants of the obstruction of justice count and all counts related to the receipt of child pornography. The jury also acquitted Defendant of two inducement counts related to Tracy and Brittany.

The jury returned a verdict of guilty against the Defendant in connection with the child pornography counts involving Jane (counts one through three), the inducement count as to Jane (count nine), and two additional inducement counts in connection with Nia and Pauline (counts ten and twelve).

Defendant's post-trial motions were subsequently denied. [Dkt. No. 416] The District Court judge sentenced the Defendant to 240 months' imprisonment, an above-guidelines sentence. (Sent. R. 70) The District Court vaguely referenced Defendant's obstruction and current sentencing guidelines when imposing the above guidelines sentence. (Sent. R. 69-70) With the exception of one year, the sentence was ordered to be served concurrent to Defendants' 30-year sentence imposed in a separate prosecution in the Eastern District of New York ("EDNY"). (Sent. R. 70)

This appeal follows.

## SUMMARY OF ARGUMENT

Defendant Kelly was convicted of three separate counts of 18 U.S.C. § 2251(a), stemming from the creation of three videos depicting sexual conduct with Jane who testified that she was 14 years old at the time the videos were created. Defendant was also convicted of violating 18 U.S.C. § 2422(b) as to Jane with whom he had a romantic relationship that lasted roughly 12 years and a friendship that endured until Defendant was indicted in 2019.

The jury returned two additional guilty verdicts for violations of 18 U.S.C. § 2422(b) as to Nia and Pauline. Nia testified at trial that Defendant fondled her in a hallway at his studio on a single occasion when he was 29 years old and she was either 15 or 16 years old. Nia stated that the encounter occurred the summer of 1996 but she could not state precisely when. For her part, Pauline testified that she began engaging in sexual conduct with Defendant when she was 15 years old. The prohibited sexual relationship endured long after Pauline became an adult and she considered Defendant her boyfriend.

Defendant was acquitted of all remaining counts of the superseding indictment, including an obstruction of justice charge claiming that Defendant obstructed his 2008 state-court prosecution for the production of child pornography involving Jane. Indeed, Government Exhibit 1 was the same video that formed the basis of Defendant's state-court charges in 2008 for which he was acquitted.

Defendant seeks reversal of his convictions on the grounds that the charges for child sexual exploitation and inducement were time barred. Specifically,

10

Defendant maintains that the 2003 amendment that extended the statute of limitations for conduct involving sexual abuse was inapplicable to the charged offenses that occurred in the 1990s, because Congress only intended it to apply prospectively. Thus, the statute of limitations for the charges on which Defendant was convicted expired no later than 2009 when Nia, Pauline, and Jane all turned 25 years old.

Alternatively, Defendant seeks a new trial on the inducement counts related to Nia and Pauline where the District Court abused its discretion when it denied Defendant's motion to sever those counts from the child pornography counts related to Jane. Because the evidence in connection with the child pornography counts related only to Jane and was substantially stronger than the evidence supporting the inducement counts related to Nia and Pauline, the inducement counts should have been severed to afford the Defendant a fair opportunity to defend those claims. There can be little question that the jury was unduly influenced by the child pornography evidence that otherwise would have been inadmissible if the inducement counts were severed.

Lastly, Defendant's 240-month above-guidelines sentence was procedurally and substantively improper. The District Court failed to identify the basis on which he upwardly departed 72 months from the applicable Guidelines range of 135 to 168 months except to suggest that it was based on acquitted conduct and the fact that Defendant's crimes would be punished more severely under the current guidelines. Because the District Court failed to state a definitive basis for its significant

11

upward variance and violated the Ex Post Facto Clause by subjecting Defendant to current Federal Sentencing Guidelines rather than the applicable 1997 Guidelines, Defendant is entitled to a new sentencing hearing.

## ARGUMENT

I.  **Defendant's Convictions for Sexual Exploitation and Inducement of a Child Must Be Reversed Where the Charges Were Brought Outside the Applicable Statute of Limitations.**

Because the statute of limitations on the counts for which Defendant was convicted, namely the child pornography and inducement counts, expired no later than 2009, they were time barred. Defendant moved pretrial to dismiss his indictment on statute of limitations grounds. Fed. R. Crim. P. 12(b)(1) & (b)(1)-(2) advisory committee note. The district court denied Defendant's pretrial motion to dismiss. This Court reviews the legal issue *de novo. United States v. O'Brien,* 953 F. 3d 449, 454 (7th Cir. 2020).

Federal law imposes a five-year limitations period for most non-capital offenses. 18 U.S.C. § 3282(a). Over the years, Congress has provided a longer limitations period for "offense[s] involving the sexual or physical abuse, or kidnapping" of a minor. 18 U.S.C. § 3283. At the time Defendant committed the conduct for which he was charged and convicted, namely the child pornography counts (counts one through three) and the inducement counts (counts nine, ten, and twelve), section 3283 provided as follows:

> No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the

12

age of 18 years shall preclude such prosecution before the child reaches the age of 25 years. 18 U.S.C.§ 3283 (1994)

Consistent with the foregoing provision, at the time of the charged conduct, the statute of limitations for offenses involving sexual abuse were extended until the victim/minor reached 25 years old. Thus, section 3283 extended the five-year limitations period for the conduct alleged in counts one through three and nine of the superseding indictment until September 2009 when Jane reached her 25th birthday. The statute of limitations for count ten was extended until 2005 when Nia turned 25 years old, and the statute of limitations for count twelve was extended until October 2009 when Pauline turned 25 years old. Defendant was not charged until more than a decade after the expiration of the statute of limitations under the applicable law at the time of the alleged conduct.

Unless subsequent amendments to section 3283 apply retroactively in this case, Defendants' convictions must be vacated and dismissed as time barred. In 2003, Congress amended the statute, extending the statute of limitations through the life of a minor. 18 U.S.C. § 3283 (2003).[2] Congress did not express an intent for the 2003 amendment to apply retroactively. Consistent with the well-established presumption against retroactive legislation, the 2003 amendment is inapplicable to the charged conduct as is any subsequent amendments to section 3283. *See United States v. Diehl*, 775 F. 3d 714, 720 (5th Cir. 2015) (applying the version of 18 U.S.C.

---

[2] Congress amended the statute again in 2006 to its current version which provides a limitations period for the life of the victim or 10 years after the offense, whichever is longer. 18 U.S.C. § 3283.

§ 3283 in effect at the time of the defendant's offense rather than the amended version in effect at the time of the indictment).

It is axiomatic that "criminal limitations statutes are 'to be liberally interpreted in favor of repose,'" *Toussie v. United States*, 397 U.S. 112, 115 (1970). "[R]etroactivity is not favored in the law." *Velásquez-Garcia v. Holder*, 760 F. 3d 571, 579 (7th Cir. 2014) quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The Supreme Court has explained that this aversion to retroactive rulemaking is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal. *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). With these principles in mind, the District Court erred when it retroactively applied the 2003 (or 2006) versions of section 3283 and denied Defendant's motion to dismiss on statute of limitations grounds.

The United States Supreme Court in *Landgraf* set forth a framework for determining whether a federal statute of limitations applies to past conduct:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he

14

acted, increase a party's liability for past conduct, or impose new
duties with respect to transactions already completed. If the statute
would operate retroactively, our traditional presumption teaches that
it does not govern absent clear congressional intent favoring such a
result. *Id.* at 280.

Thus, under *Landgraf*, if Congress has expressly prescribed that a statute applies

retroactively or will not apply retroactively, the inquiry ends. If the statute is silent

on the issue, courts proceed to the second step of the *Landgraf* analysis and

determine whether the new statute would have retroactive effects. *Id.*

Here, the 2003 amendment of section 3283 contains no language expressly

prescribing retroactive application of the amendment. Although the statute does not

expressly provide that it may only apply prospectively, it employs language that

points toward prospective application. The section twice uses forward-looking modal

verbs: "would" and "shall." 18 U.S.C. § 3283 ("[n]o statute of limitations that *would*

otherwise preclude prosecution for an offense involving the sexual or physical

abuse, or kidnaping, of a child under the age of 18 years *shall* preclude . . ."); *See*

*Appalachian Power Co. v. E.P.A,* 249 F. 3d 1032, 1057 (D.C. 2001) (characterizing

the phrase "would emit" as a future conditional phrase."); *Salahuddin v. Mean,* 174

F. 3d 271, 275 (2d Cir. 1999) ("[t]here is no doubt that "shall" is an imperative, but

it is equally clear that it is an imperative that speaks to future conduct."); *Martin v.*

*Hunter's Lessee,* 14 U.S. 304, 314 (1816) ("[t]he word *shall,* is a sign of the future

tense . . .").

The Legislative history of the statute further supports Defendant's contention

that Congress used prospective language in the statute to evince its intent that the

statute apply *prospectively* and not retroactively. Critically, Congress considered and rejected language that expressly prescribed retroactive effect, showing its intent that the amendment only apply prospectively. In fact, the House of Representatives version of the bill provided for the complete elimination of a statute of limitations and included an express retroactivity provision, declaring "the amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of enactment of this section." Child Abduction Prevention Act, H.R. 1104, 108th Cong. § 202 (2003). The Senate version contained no retroactivity provision. PROJECT Act, S. 151, 108th Cong. When the House and Senate conferenced to resolve differences between the bills, the retroactivity provision was omitted. Senator Leahy, one of the bill's original co-sponsors and a former chair of the Senate Judiciary Committee, stated on the Senate floor, the omission was intentional: "I am pleased that the conference agreed to drop language from the original House-passed bill that would have extended the limitations period retroactively." Senator Leahy, Amber Legislation, Cong. Rec. 149:50, S5147 (2003).

The legislative history of the bill expresses Congress's intent that the amendment apply prospectively. *See Martin v. Hadix*, 527 U.S. 343, 355-57 (1999) (examining "structure and legislative history" as part of first *Landgraf* step); *see also*, *Food and Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 144 (2000); *Lattab v. Ashcroft*, 384 F. 3d 8, 14 (1st Cir. 2004) ("our inquiry is not limited to the statutory text but may include an examination of standard

ensigns of statutory construction, such as the statute's truck and legislative history.") In sum, Congress affirmatively rejected the proposed retroactive application provision, indicating its intent that the statute apply prospectively.

Even if this Court concludes that Congress's intent is not express, retroactive application of the 2003 amendment fails to pass the second prong of the *Landgraf* test. The United States Supreme Court held in *Stogner v. California*, 539 U.S. 607, 618 (2003) that retroactive applications of extended statutes of limitations to revive time-barred claims violate the Ex Post Facto Clause. The District Court held that the 2003 (and 2006) amendments did not revive time-barred claims in this case but rather extended the limitations period for prosecuting those offenses before the limitations period expired. Admittedly, this Court, relying on *Stogner,* has held in different circumstances that extending a limitations period before a prosecution is time-barred does not run afoul of the Ex Post Facto Clause. *See, United States v. Gibson,* 490 F. 3d 604, 609 (7th Cir. 2007).

However, Defendant maintains that an analysis of the retroactivity of a criminal statute of limitations under the second step must recognize the principle that unlike civil statutes of limitations, "criminal limitations are to be liberally interpreted in favor of repose." *Toussie*, 397 U.S. at 115; *see also*, *United States v. Gentile*, 235 F. Supp. 3d 649, 655 (D.N.J. 2017) (observing that if *Landgraf* and *Toussie* "are read in conjunction," courts "must interpret the statute of limitations in a manner favoring repose for Defendant.") As the First Circuit acknowledged, *Toussie* "potentially alters the second step in the *Landgraf* approach" in criminal

17

cases. *United States v. Miller*, 911 F. 3d 638, 645 (1st Cir. 2018) (evaluating 2003 amendment in adjudicating ineffective assistance of counsel claim). "In other words, when Congress has sounded an uncertain trumpet, a court ought to refrain from applying an enlarged criminal statute of limitations retrospectively." *Id.* As discussed, *supra*, Congress sounded an uncertain trumpet regarding the retroactivity of the 2003 amendment when it affirmatively removed a retroactivity provision from the bill.

In light of *Toussie*, this Court should reject a retroactive application of the 2003 amendment even if it is not the equivalent of an Ex Post Facto violation because it runs afoul of familiar considerations of fair notice, reasonable reliance, and settled expectations. Put differently, Defendant urges this Court to read the second step of *Landgraf* as providing broader protections for criminal defendants than the Ex Post Facto Clause. Statutes of limitations "applicable to criminal prosecutions are designed principally to protect individuals from having to defend themselves against charges supported by facts that are remote in time." *United States v. Rivera-Ventura*, 72 F. 3d 277, 281 (2d Cir. 1995). That concern was acute in this case where the government sought to rely on the retroactive extension of criminal statute of limitations to prosecute a case based on conduct that is more than two decades old. Retroactive application of the 2003 amendment not only flies in the face of congressional intent; it violates notions of fundamental fairness.

In sum, section 3283 by its language and its legislative history was intended to apply prospectively. The inquiry ends there. But even if this Court examined the

question under step two of the *Landgraf* the analysis, it should decide against retroactive application of the amendment. Accordingly, this Court should vacate the Defendant's convictions as time barred.

## II.     The Trial Court Abused Its Discretion When It Denied Defendant's Motion to Sever the Inducement Counts (Counts Ten through Thirteen) from the Child Pornography Counts Related to Jane (Counts One through Three).

Defendant suffered unquantifiable prejudice by the joinder of the child pornography counts related to Jane with various inducement counts related to other minors. Because the government's evidence in connection with charges related to Jane was significantly stronger than those connected to Nia and Pauline, the District Court erred when it refused to sever the non-Jane inducement counts from the rest of the indictment. This Court should vacate Defendant's convictions for violations of 18 U.S.C. § 2422(b) as to Nia and Pauline and remand for a new trial on those counts alone.

This Court reviews a District Court's decision to deny a motion to sever the counts of an indictment for abuse of discretion. *United States v. Smith,* 308 F. 3d 726, 736 (7th Cir. 2002).

Federal Rule of Criminal Procedure 8 allows for joinder of counts where offenses are, "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." However, Rule 14 "Relief of Prejudicial Joinder," provides for severance in

cases of "substantial prejudice." *See United States v. Werner* (2d Cir. 1980) 620 F.2d 922, 928. Rule 14 states:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

Courts have recognized that substantial prejudice results from joining charges that are supported by relatively strong evidence with charges supported by much weaker evidence. *United States v. Alverado,* 1994 U.S. Dist. LEXIS 17062, *12 (S.D.N.Y 1994). *See, e.g., United States v. Foutz,* 540 F.2d 733, 738 (4th Cir. 1976) (where difference in the strength of two cases was great, "we cannot presume that the jury adhered to limiting instructions and properly 'segregate[d] [the] evidence into separate intellectual boxes'" (citation omitted)); *United States v. Ragghianti,* 527 F.2d 586 (9th Cir. 1975) (reversing trial court's determination that severance was not required where there was strong evidence of one robbery and weak evidence of another); *Gregory v. United States,* 125 U.S. App. D.C. 140, 369 F.2d 185, 189 (D.C. Cir. 1966) (similar), *cert. denied,* 396 U.S. 865, 24 L. Ed. 2d 119, 90 S. Ct. 143 (1969).

In this case, the child pornography counts (counts one through three) of the indictment were supported by video-recorded evidence. Video-recorded evidence reflecting the prohibited sexual contact with Jane is dramatically stronger evidence that than the 25-year-old testimonial evidence of Nia and Pauline. Indeed, as to Pauline, the question of when her sexual relationship with Defendant commenced

was a hotly contested issue. Pauline testified that she began having sexual relations with the Defendant when she was under 17 years of age. She had previously denied any sexual relations with the Defendant as a minor, including under oath, and only reported a sexual relationship with the Defendant as a minor in 2019. Pauline also testified on direct examination that she recalled drinking a liquor known as Hpnotiq with the Defendant during the period of time when she was a minor and engaged in sexual activity with him. (R. 2305) But Defendant presented evidence that Hpnotiq was not available to the market until Pauline was 17 years of age, belying her claim that she began sexual activity with the Defendant when she was underage. (R. 3611) Notably, there was no video evidence that reflected Pauline's sexual activities with the Defendant and she claimed to never have seen any such evidence. The point here is that the evidence related to Pauline and Nia turned almost entirely on 25-year old testimony, largely uncorroborated rather than video evidence of sexually explicit conduct with a minor.

There can be little question that the jury's assessment of the evidence as to Nia and Pauline was greatly influenced by the child pornography evidence as to Jane. Defendant had a little chance of persuading a jury that the government failed to meet its burden in connection with charges related to Nia and Pauline where any doubts the jury may have harbored would have pushed aside in light of the dramatically stronger evidence on the counts related to Jane.

Similarly, substantial prejudice can result where a Defendant has important testimony to give on one case and a strong need to refrain from testifying on the

other. *Cross v. United States,* 335 F. 2d 987 (D.C. Cir. 1964). *United States v. Archer*, 843 F.2d 1019, 1022 (7th Cir. 1988); *Baker v. United States,* 401 F.2d 958, 977 (D.C. Cir. 1968); *United States v. Ely*, 910 F.2d 455, 457 (7th Cir. 1990).

In *Baker,* the D.C. Circuit observed:

> Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus, he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus, he may be coerced into testifying on the count upon which he wished to remain silent. It is not necessary to decide whether this invades his constitutional right to remain silent, since we think it constitutes prejudice within the meaning of Rule 14. *Baker v. United States*, 401 F. 2d 958, 976 (D.C. Cir. 1968). *See also, Archer*, 843 F. 2d at 1022 (recognizing that sometimes circumstances can coerce a defendant into testifying on a count upon which he wishes to remain silent.).

In light of the foregoing, the District Court erred when it denied Defendant's motion to sever the inducements counts related to Nia and Pauline. As Defendant set out in his motion to sever, he had important testimony to give in connection with the inducement counts related to Nia and Pauline, but had no choice to forego giving that testimony in order to maintain his right against self-incrimination in connection with other counts in the indictment. Indeed, this is precisely the scenario that justified severance because Defendant would have been coerced into testifying

on a count upon wish he wished to remain silent in order to give testimony concerning counts ten and twelve. Joinder of the counts related to Jane and the counts related to Nia and Pauline served to prejudice the Defendant.

Severance was particularly justified here where the inducements counts were only similar to the child pornography counts as to Jane in that they both involved sexually explicit conduct with minors. *United States v. Coleman,* 22 F. 3d 126, 134 (7th Cir. 1994) *overruled on other grounds*. The inducement counts related to Nia and Pauline are of a similar character to the counts involving Jane but they involve different minors, different acts, and largely different evidence. But because of the similar nature to the counts involving Jane, the risk of prejudice was acute. Because the jury concluded that Defendant was guilty of the child pornography for which there was significantly stronger evidence, it likely did not bother to consider whether the government satisfied its burden in connection with the inducement counts related to Nia and Pauline. The District Court should have severed the inducement counts from the child pornography counts to afford the Defendant a fair shot at defending those claims which turned on 25-year old testimony that Defendant sought to challenge.

**III.   Defendant's 240-Month Above-Guidelines Sentence Was Both Procedurally and Substantively Improper.**

Defendant was sentenced to 240 months' imprisonment, a sentence that was significantly above the applicable guidelines range calculated at 135 to 168 months. After correctly calculating the guidelines range, the District Court sentenced Defendant to a sentence that was four offense levels above the applicable guidelines range. The District Court's stated basis for applying a significant upward variance was ambiguous and unjustified in any event. Indeed, the District Court's sentence appeared to be motivated by acquitted conduct and consideration of the *current* Federal Sentencing Guidelines which generally reflect greater punishment in child exploitation cases but which were not applicable to Defendant's 1990s conduct. Accordingly, this Court should vacate the Defendant's sentence and remand for resentencing with directions that the District Court sentence the Defendant to a Guidelines sentence or expressly identify the basis upon which an above-guidelines sentence was appropriate.

A reviewing court reviews *de novo* a procedural challenge to a defendant's challenge and the substantive reasonableness of the sentence for abuse of discretion. *United States v. Ballard,* 950 F. 3d 434, 436 (7th Cir. 2020).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007). After a proper calculation, a sentencing judge considers the seven factors set forth in 18 U.S.C. § 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant;" the four legitimate purposes of sentencing, as set

forth below; "the kinds of sentences available;" the applicable Guidelines range itself; and relevant policy statement by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants;" and "the need to provide restitution to any victims." 18 U.S.C. § 3553 (a)(1)-(7); *see also, Gall,* 552 U.S. at 50, n.6. The statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553 (a)(2).

Defendant largely agrees with the District Court's sentencing analysis but objects to the court's above-guidelines sentence that appears to have been based on acquitted conduct and current Sentencing Guidelines rather than the applicable Guidelines, although the court was not entirely clear on his basis for imposing an above-guidelines sentence. The District Court concluded that the applicable combined offense level was 32 which resulted in a Guidelines range of between 135 and 168 months' imprisonment under the 1997 Federal Sentencing Guidelines.[3] (Supp. R. 18) However, when imposing a 240-month sentence, the District Court did not expressly state his basis for an above-guidelines sentence, instead vaguely suggesting a basis for an upward variance. The Court stated:

> So, anyway, as far as if I was going to sentence Mr. -- I would probably have -- considering all the factors that I've outlined before, I would have probably had a variance upwards from the top end of the Guidelines, which was 168. Again, I think there was some evidence, justification for the obstruction and some -- because of the increase in the current Guidelines, so that in all probability, if I was sentence Mr. Kelly as. result of -- I would probably give him a sentence in the

---

[3] The government conceded that the 1997 Guidelines were the applicable guidelines in this case. Probation suggested application of the 2000 Federal Sentencing Guidelines. Defendant's Guidelines range did not change whether the 1997 or 2000 Guidelines were applied.

neighborhood of 240 months. So, I will -- it seems to me that under all the facts and circumstances, that is a valid sentence, the 240 months. (Sent. R. 69-70)

This Court has acknowledged that because the Guidelines are advisory, district judges have discretion to sentence a defendant outside the calculated Guidelines range. *Ballard,* 950 F. 3d at 436. This holding is consistent with §5K2.0 of the 1997 Federal Sentencing Guidelines which observed that "the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence from that described.'"

However, when a sentencing court does impose a sentence that varies from the applicable guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Ballard,* 950 F. 3d at 436 *citing United States v. Miller,* 601 F. 3d 734, 739 (7th Cir. 2010). The judge's explanation of the deviation must "articulate[] and justif[y] the magnitude of the variance." *Id. citing United States v. Conaway,* 713 F. 3d 897, 904 (7th Cir. 2013). It follows that more significant justification is necessary for more substantial departures. *Id. citing United States v. Castillo,* 695 F. 3d 672, 673 (7th Cir. 2012). Failing to adequately explain a chosen sentence, including an explanation for deviation from the Guidelines range, is a procedural error. *Id.* at 437.

In this case, the District Court's 240-month sentence is both procedurally and substantively improper. As the record reflects, the District Court failed to clearly articulate on what basis he sentenced the Defendant to a term of imprisonment that exceeded the maximum guidelines sentence by a whopping 72 months. The District Court hinted at the grounds for its above-guidelines sentence when it vaguely referenced obstruction and current Guidelines, but the record is far from clear.

Moreover, the grounds that the District Court referenced as his basis for a 20-year sentence appears to be based, at least in part, on the Court's view that the Defendant obstructed justice, presumably in connection with conduct related to his state-court conviction for which he was acquitted. While obstruction might permit an enhancement of the offense level, the obstruction enhancement relates to obstruction in the *instant* offense - not for an obstruction charge for which Defendant was acquitted. USSG § 3C1.1 There was no claim by any party that Defendant attempted in any way to obstruct *this* prosecution.

Defendant recognizes that this Court and the United States Supreme Court has held that acquitted conduct may be considered by a sentencing court so long as that conduct has been proven by a preponderance of the evidence. *See United States v. Holton,* 873 F. 3d 589, 592 (7th Cir. 2017) *citing United States v. Watts,* 519 U.S. 148, 157 (1997). *But see, United States v. Brown,* 892 F.3d 385, 408 (D.C. Cir 2018) (Millett J., concurring) (condemning the use of acquitted conduct as a basis for increasing the length of imprisonment); *United States v. Canania*, 52 F.3d 764, 776 (8th Cir. 2008) (Bright J., concurring) (opining that the use of acquitted conduct

in sentencing violates the Due Process Clause of the Fifth Amendment and undermines the principle of fair notice). In this case, however, the District Court merely hinted at its right to make such a finding. (Sent. R. 63) The District Court never expressly and unambiguously found that by a preponderance of the evidence standard, Defendant had obstructed his 2008 prosecution as the government charged in its indictment nor did it identify what facts it credited in making the finding that Defendant obstructed justice by the lower standard. Indeed, the District Court made no mention of any conduct on the part of the Defendant that would have allowed it to conclude that Defendant obstructed his 2008 criminal prosecution by the lower standard of proof.

Rather, the District Court mentioned that Defendant's" minions" had started a rather "Keystone Cop" kind of operation to get tapes back, but this conduct, even if credited under a lower standard of proof, was not evidence of obstructing Defendant's 2008 state-court prosecution based on a tape that was already in the State's possession. The District Court seemed to be referencing evidence related to conspiracy to receive child pornography (of which the Defendants were also acquitted) - not the obstruction of justice charge. The record is simply unclear as it relates to what facts the District Court relied on when concluding that an upward variance based on "obstruction" was justified. Assuming that acquitted conduct may be used to justify an upward variance without violating the Due Process clause as this Court has held, a sentencing court must, at a minimum, make such a finding and explain how it reached the conclusion that the Defendant had committed the

acquitted conduct by the lower standard of proof. The District Court judge failed to do so here.

Even more problematic, the District Court violated the Ex Post Facto Clause when it sentenced Defendant to an above-guidelines sentence simply because the current Sentencing Guidelines generally call for higher offenses levels than did the applicable 1997 Sentencing Guidelines. *Peugh v. United States,* 569 U.S. 530 (2013). The United States Supreme Court has held that it is an ex post facto violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense. *Id.* at 533.

It is true that this Court has held that a District Court at sentencing: (1) may interpret the Commission's later addition of an *aggravating element* as a sentencing factor as evidence that a previous version of the Guidelines did not adequately consider that factor in the sentencing scheme; and (2) may also consider later amendments for determining how much of a departure is warranted for the aggravated conduct in question. *United States v. Coe,* 220 F. 3d 573, 578 (7th Cir. 2000). However, *Coe* does not stand for the proposition that the District Court may upwardly depart from the applicable sentencing range by merely pointing that had the Defendant committed his crimes today, his offense level would be greater.

Unlike *Coe,* the District Court here did not identify any recent amendment or specific aggravating element codified in the current Guidelines (but not the 1997 Guidelines) that justified a significant upward variance. Further, the District Court

did not identify any aggravating elements that were omitted as a sentencing factor in the applicable 1997 Guidelines but exist in recent iterations of the Guidelines. Rather, the court simply observed that the *offenses* for which Defendant was convicted now carry a higher base offense level than they did in 1997. Imposing an above-guidelines range for no reason other than the current Guidelines are generally more punitive is a textbook *ex post facto* violation.

In sum, Defendant's 240-month above-guidelines sentence was procedurally improper where the District Court failed to identify the grounds on which he was imposing a sentence 72 months higher than the maximum guidelines sentence. To the extent the District Court relied on acquitted conduct to justify that upward variance, it failed to state unambiguously that it had found that Defendant committed certain acquitted conduct by a preponderance of the evidence. Furthermore, Defendant's sentence runs afoul of Ex Post Facto Clause where the Court justified its upward departure sentence, because Defendant would be punished more harshly today for the same conduct than what the 1997 Guidelines demand. Accordingly, Defendant's sentence must be vacated and the matter remanded for a new sentencing hearing where Defendant is sentenced to a Guidelines sentence or where the Court specifically identifies a basis for upwardly departing by four offense levels.

## CONCLUSION

For the foregoing reasons, Defendant's convictions must be reversed. Alternatively, Defendant's convictions at to counts ten and twelve must be vacated

and remanded for a new trial. Lastly, Defendant is entitled to a new sentencing

hearing.

Respectfully Submitted,

/s/ JENNIFER BONJEAN
Bonjean Law Group, PLLC.
750 Lexington Ave, 9th Floor
New York, NY 10022
Tel: (718) 875-1850
Fax: (718) 230-0582
jennifer@bonjeanlaw.com

<u>**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)**</u>

The undersigned, counsel of record for the Defendant-Appellant, Robert S. Kelly, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font.

The length of this brief is 7,629 words.

Dated: August 2, 2023                  Respectfully Submitted,

                                          <u>/s/ JENNIFER BONJEAN</u>
                                          Bonjean Law Group, PLLC.
                                          750 Lexington Ave, 9th Floor
                                          New York, NY 10022
                                          Tel: (718) 875-1850
                                          Fax: (718) 230-0582
                                          jennifer@bonjeanlaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH CIR. R. 30(a)&(b)</u>

I hereby certify that all of the materials required by parts (a) and (b) of

Circuit Rule 30 have been included.

Dated: August 2, 2023                              Respectfully Submitted,

<u>/s/ JENNIFER BONJEAN</u>
Bonjean Law Group, PLLC.
750 Lexington Ave, 9th Floor
New York, NY 10022
Tel: (718) 875-1850
Fax: (718) 230-0582
jennifer@bonjeanlaw.com

33

## CERIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Brief of Defendant-Appellant Robert Sylvester Kelly, and the annexed Required Appendix was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

Dated: August 2, 2023                    Respectfully Submitted,

/s/ JENNIFER BONJEAN
Bonjean Law Group, PLLC.
750 Lexington Ave, 9th Floor
New York, NY 10022
Tel: (718) 875-1850
Fax: (718) 230-0582
jennifer@bonjeanlaw.com

## TABLE OF CONTENTS TO REQUIRED APPENDIX

1. Order [Dkt. No. 222] (entered 6/30/22)…………………………………APPENDIX 1

2. Judgment in a Criminal Case [Dkt. No. 428] (entered 2/23/23)……APPENDIX 13

3. Transcript of Sentencing Proceedings Held on February 22, 2023 [Dkt. No. 436]………………………………………………………………APPENDIX 22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

ROBERT SYLVESTER KELLY, a/k/a
"R. Kelly," DERREL McDavid,
and MILTON BROWN, a/k/a "June
Brown",

               Defendants.

Case No. 19 CR 567

Judge Harry D. Leinenweber

## ORDER

Before the Court is Defendants' Motion to Dismiss Counts One through Four and Counts Six through Thirteen of the Superseding Indictment (Dkt. No. 189). Also before the Court is Defendant Kelly's Motion to Sever (Dkt. No. 196). For the reasons stated herein, the Motions are denied.

## STATEMENT

### A. Motion to Dismiss

On February 13, 2020, the Government filed a Superseding Indictment charging Defendant Kelly with thirteen counts, Defendant McDavid with four counts, and Defendant Brown with one count. (Dkt. No. 93.) Defendant McDavid previously moved to dismiss Count Five. (Dkt. No. 71.) This Court denied that Motion. (Dkt. No. 89). On May 2, 2022, Defendants filed another Motion to

Dismiss, arguing that all counts, except Count Five, should be
dismissed. (Dkt. No. 189). Defendants argue that the counts are
untimely and barred by the statute of limitations.

### 1. Counts One Through Four

Counts One through Four of the Indictment charge Defendant
Kelly with producing four videos of a minor engaged in sexually
explicit conduct in violation of 18 U.S.C. §2251(a). (Indict. at
1—4, Dkt. No. 93.) The indictment states that the videos were
produced between 1998 and 1999. (*Id.*) At the time of the charged
conduct, the statute of limitations expired once the minor reached
the age of 25. 18 U.S.C. § 3283 (1994) (amended 2006). Kelly argues
that, as a result, these counts are time barred. In response, the
Government argues that the limitations period was extended when
the statute was amended, and the extended date should apply.

18 U.S.C. § 3283 was amended in 2003, extending the statute
of limitations to the life of the minor. 18 U.S.C. § 3283 (2003)
(amended 2006). The statute was amended again in 2006, extending
the statute of limitations to the life of the child or ten years
after the offense, whichever is longer. 18 U.S.C. § 3283. If the
operative limitations period is the one set out in the 1994 version
of the statute, Counts One through Four expired in 2009. If the
amended statute of limitations applies, the Counts are timely
brought.

APPENDIX 2

The Supreme Court has set out a two-step test to decide whether a federal statute applies to past conduct. *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). The first step is to "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* If the statute's proper reach is clear, the inquiry ends there. *Id.* However, if the statute is silent, the next step is to determine whether applying it retroactively would impair a party's rights. *Id.* Defendants urge the Court to look to the legislative history of 18 U.S.C. § 3283 and rule that Congress expressly prescribed that the statute does not apply retroactively. Defendants point to the House version of the bill, which contained an express retroactivity provision. Child Abduction Prevention Act, H.R. 1104, 108th Cong. § 202 (2003). The final version of the bill omitted this provision, and Senator Leahy confirmed that the omission was intentional. Senator Leahy, Amber Legislation, Cong. Rec. 149:50, S5147 (2003). Judge Nathan of the Southern District of New York recently dealt with this precise issue in the prosecution of Defendant Ghislaine Maxwell. *United States v. Maxwell*, 534 F.Supp.3d 299 (S.D.N.Y, 2021). There, Judge Nathan analyzed 18 U.S.C. § 3283, finding that Congress not only permitted, but intended, 18 U.S.C. § 3283 to allow prosecutions for past conduct for which the statute of limitations has not expired. *Id.* at 316. The Court agrees with Judge Nathan's analysis. With each amendment to 18 U.S.C. § 3283, the statute of limitations

- 3 -

APPENDIX 3

increased. In light of the lack of retroactivity provision, but steadily increasing statutes of limitations, the Court finds that the statute does not prescribe its proper reach.

The Court next moves to the second step of the *Landgraf* test. The Court finds that applying the current version of 18 U.S.C. § 3283 would not impair the Defendants' rights. In the Seventh Circuit, "applying procedural statutes . . . which effectively [enlarge] the limitations period, does not violate the *ex post facto* clause so long as the statute is passed before the given prosecution is barred." *U.S. v. Gibson*, 490 F.3d 604, 609 (7th Cir. 2007) (citing *Stogner v. California*, 539 U.S. 607 (2003)). However, in their Motion to Dismiss Defendants "[urge] this Court to read the second step of *Landgraf* as providing broader protections for *criminal defendants* than the *Ex Post Facto* clause." (Mot. to Dismiss p. 8, Dkt. No. 189) (emphasis in original). The Court declines to do so. Applying the current version of 18 U.S.C. § 3283 does not impair any of the Defendants' rights because the statute was amended before the original limitations period expired. This Court will not disturb well-settled law to create new statutory rights where none currently exist. Counts One through Four are timely.

### 2. Counts Six Through Eight

Counts Six charges all Defendants with conspiring to receive child pornography in violation of 18 U.S.C. §2252A (a)(2) and

- 4 -

APPENDIX 4

(b)(1). (Indict. at 17.)  The Indictment states that the conspiracy took place between 2001 and 2007. (*Id.*) Count Seven charges Defendants Kelly and McDavid with receiving two videos of child pornography, in violation of 18 U.S.C. §2252A (a)(2) and (2). (*Id.* at 18.) The Indictment alleges that Kelly and McDavid received these videos in August 2001. (*Id.*) Count Eight charges Defendants Kelly and McDavid with receiving one video of child pornography, in violation of 18 U.S.C. §2252A (a)(2) and (2). (*Id.* at 19.) The Indictment states that Kelly and McDavid received this video in April 2007. (*Id.*)

Defendants argue that Counts Six through Eight are subject to the general five-year statute of limitations and are now untimely. 18 U.S.C. § 3282 (a) (stating that, unless otherwise provided by law, the statute of limitations for a non-capital offense is five years). The Government argues that the Court should apply the statute of limitations set forth in 18 U.S.C § 3299. According to 18 U.S.C § 3299, there is no statute of limitations for an offense under chapter 110 of Title 18 of the United States Code. Counts Six through Eight all charge Defendants with violations of § 2252, which fall under chapter 110 of Title 18. As such, § 3299 applies to Counts Six through Eight. § 3299 became effective on July 27, 2006.

The Court finds that counts Six through Eight are timely. First, Counts Six and Eight of the indictment both state that the

- 5 -

APPENDIX 5

conduct in question concluded after 18 U.S.C § 3299 was enacted.
Therefore, 18 U.S.C § 3299 clearly applies, and a prosecution for
these counts can be brought at any time, including in the current
indictment.

The accused conduct in Count Seven took place before 18 U.S.C
§ 3299 was enacted. The Court applies the *Landgraf* test to this
Count. In the first step, the Court finds that the text of 18 U.S.C
§ 3299 is silent as to its proper reach. In the second step, the
Court finds that applying the statute would not impair the
Defendants' rights. In drawing this conclusion, the Court once
again applies *Gibson*. *Gibson*, 490 F.3d 604. 18 U.S.C § 3299 was
enacted on July 27, 2006. The parties dispute what statute of
limitation applied to Count Seven during the time of the accused
conduct. The Defendants argue that Count Seven is subject to the
general five-year statute of limitations. 18 U.S.C. § 3282 (a) The
Government argues that the limitations period extended until the
relevant minors turned 25, as specified in 18 U.S.C. § 3283. The
Court notes the dispute is largely irrelevant here. Either way,
Count Seven is timely. Applying the shorter limitations period of
five years, the statute of limitations would have expired in August
2006. As 18 U.S.C § 3299 was enacted before the original
limitations period expired, there is no *ex post facto* problem,
meaning Defendants' rights are not infringed. *Gibson*, 490 F.3d at
609. The Court applies 18 U.S.C § 3299 here; Count Seven is timely.

- 6 -

APPENDIX 6

### *3. Counts Nine Through Thirteen*

Counts Nine through Thirteen of the Indictment charge Defendant Kelly with knowingly enticing minors to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (Indict. at 20—24.) In addition, Counts Nine, Ten, Twelve, and Thirteen charge Defendant Kelly with aggravated criminal sexual abuse, in violation of 720 ILCS 5/12-16(d). (*Id.* at 20—21, 23—24.) The Indictment states that the activity occurred between 1996 and 2001. (*a* 20—24.) Like with charges One through Four, 18 U.S.C. § 3283 provides the relevant statute of limitations. At the time of the accused conduct, the limitation period expired when the minor turned 25 years old. The earliest date at which any minor in the accused conduct turned 25 was August 2005. As discussed earlier, 18 U.S.C. § 3283 was amended in 2003, extending the limitations period to the life of the child. Earlier in this order, the Court analyzed the applicability of the amended version of 18 U.S.C. § 3283 to Counts One through Four of the Indictment. The analysis for counts Nine through Thirteen is largely the same. Applying the first step of the *Landgraf* test, the Court finds that 18 U.S.C. § 3283 does not explicitly prescribe its proper reach. In the second step of *Landgraf*, the Court applies *Gibson*. Defendant Kelly's rights are not infringed because 18 U.S.C. § 3283 was twice amended before the previous limitations periods for Counts Nine through Thirteen expired. The Court applies the current version of 18

APPENDIX 7

U.S.C. § 3283 to Counts Nine through Thirteen. Counts Nine through Thirteen are timely as well. In sum, Defendants' Motion to Dismiss is denied in its entirety.

**B. Motion to Sever**

Defendant Kelly has also filed a Motion to Sever. (Dkt. No. 196.) Kelly requests that Defendant McDavid be tried separately, and that Counts Ten through Thirteen be severed from the rest of the Indictment.

Federal Rule of Criminal Procedure 14 authorizes district courts to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14. District courts have discretion to grant the relief they deem proper, whether that is severance, or something less drastic, such as a limiting instruction. *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993). In cases involving conflicting defenses, severance is not required, even if prejudice to a defendant is shown. *Id.* 538-539. A court must only grant severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable about judgment about guilt or innocence." *Id.* at 539.

APPENDIX 8

### *1. Severing Defendant McDavid*

Defendant Kelly argues that Defendant McDavid should be tried separately because of antagonistic defenses and because one of McDavid's lawyers may have a potential conflict of interest.

In the Motion to Sever, Kelly alleges that both he and McDavid may present evidence against the other. Kelly alleges that he intends to present evidence that McDavid controlled the purse of the operation and pushed Kelly to continue to work to keep the money flowing. Kelly also alleges that McDavid might be used as a witness against him. Kelly's allegations do not provide further detail. Kelly argues that severance is required because he intends to show that McDavid had an interest in Kelly continuing to work. However, as the Government points out, this evidence is not necessarily antagonistic to, or even inconsistent with, McDavid's possible defense. It is entirely possible that McDavid pushed Kelly to continue working and also conspired with Kelly to conceal his misconduct.

As presented, Kelly's Motion reads as blame shifting. Blame shifting among co-defendants does not mandate severance. *U.S. v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010). Moreover, Kelly does not specify exactly what evidence he expects to present that will compromise any of McDavid's trial rights. Nor does he specify what evidence he expects McDavid to present that will be used against him. The Motion does not raise any serious risks of impeding

APPENDIX 9

Defendants' trial rights or that a jury would be prevented from making a reliable judgment.

Kelly next argues that McDavid's lawyer, Vadim Glozman ("Glozman"), may have a conflict of interest. Kelly retained a lawyer named Ed Genson ("Genson") to represent him in a criminal case, resulting in Kelly's acquittal in 2008. (Mot. to Sever ¶ 24.) Between 2008 and 2018, Kelly frequently consulted with Genson. (*Id.* ¶ 25.) Glozman was an associate at Genson's firm from 2014 to 2018. (*Id.* ¶ 28.) Kelly argues that, through this connection, Glozman may have privileged information that could be used to Kelly's detriment. Glozman denies that he has any privileged information about Kelly. (6/1/22 Hearing Tr. 29:15—16, Dkt. No. 206). Glozman stated that his only conversation with Kelly, and the first time he met Kelly, was at Kelly's indictment hearing for this case. (*Id.* 29: 14—15, 30: 23—24). Kelly does not identify any privileged information, or any class of privileged information, that he alleges Glozman accessed. Kelly submitted a Declaration on his own behalf where he states that he does "not have a specific memory of ever consulting with Vadim Glozman." (Kelly Decl. ¶ 8, Dkt. No. 201). All Kelly offers is that he has a "distinct memory of [Glozman's] name as someone who worked with Mr. Genson." (*Id.*) Kelly has not presented sufficient information to show that Glozman has an actual conflict of interest. The Court will not sever McDavid and Kelly's trials.

APPENDIX 10

### *2. Counts Ten Through Thirteen*

Kelly argues that Counts Ten through Thirteen should be severed from the rest of the Indictment because he will suffer substantial prejudice otherwise. Severance may be warranted if a defendant is improperly coerced into testifying about a count on which he wishes to remain silent. *U.S. v. Berg*, 713 F.3d 490, 496 (7th Cir. 2013). When a defendant seeks to sever charges because he wants to testify to some charges, but not others, he must show that he has a strong need to testify on one count but not the other. *U.S. v. Ervin*, 540 F.3d 623, 629 (7th Cir. 2008).

Kelly alleges that the evidence in support of Counts One through Three is stronger than the evidence in support of Counts Ten through Thirteen. In support of his argument, Kelly states that Counts One through Three are supported by video evidence, while Counts Ten through Thirteen are supported by testimonial evidence. Kelly argues that he has "important testimony to give concerning counts ten through 13 and a need to refrain from testifying as to counts 1 through 3." (Mot. to Sever ¶ 38).

Kelly's Motion to Sever does not specify exactly how he will be prejudiced if all the Counts are tried together. Kelly does not adequately explain his assertion that the evidence in support of Counts One through Three is stronger than the evidence in support of Counts Ten through Thirteen. Kelly claims that the video evidence is much stronger than testimonial evidence of

- 11 -

"questionable veracity," but fails to provide more detail. Further, Kelly's Motion fails to present evidence showing why he has a need to testify on only some of the counts. Kelly's Motion asserts that severance is warranted but does not provide specific evidence in support of that assertion. For that reason, the Court denies Kelly's Motion to Sever.

<u>**CONCLUSION**</u>

For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 189) and Kelly's Motion to Sever (Dkt. No. 196) are denied.

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 6/30/2022

- 12 -

APPENDIX 12

# UNITED STATES DISTRICT COURT
Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| ROBERT SYLVESTER KELLY | ) | Case Number:     1:19-CR-00567(1) |
| | ) | USM Number:     09627-035 |
| | ) | |
| | ) | |
| | ) | Jennifer A Bonjean |
| | ) | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)         which was accepted by the court.

☒ was found guilty on count(s) 1 - 3, 9, 10 and 12 of the superseding indictment after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section / Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|
| 18 USC Section 2251(a), 18 USC Section 2251(d) Child Pornography | October 2001 | 1s – 3 |
| 18 USC Section 2422(b) Enticement of a Minor | October 2001 | 9s, 12s |
| 18 USC Section 2422(b) Enticement of a Minor | Summer 1996 | 10s |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s) 4s -  8s, 11s and 13s of the superseding indictment.

☒ The forfeiture allegation is dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

February 23, 2023
Date of Imposition of Judgment

Signature of Judge
Harry D. Leinenweber, United States District Judge

Date: March 7, 2023

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 2 – Imprisonment                                                                                    Judgment – Page 2 of 8

DEFENDANT:  ROBERT SYLVESTER KELLY
CASE NUMBER:  1:19-CR-00567(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

228 months on 1s – 3s concurrent to all other counts and Docket Number 19 CR 286(S-3)-001 EDNY – Eastern District of New York, 12 months on 1s– 3s to run concurrent to all other counts but consecutive to Docket Number 19 CR 286(S-3)-001 EDNY – Eastern District of New York.
180 months on 9s and 12 s to run concurrent to all other counts and EDNY Docket Number 19 CR 286.
120 months on 10s to run concurrent to all other counts and EDNY Docket Number 19 CR 286.

☐       The court makes the following recommendations to the Bureau of Prisons:

☒       The defendant is remanded to the custody of the United States Marshal.

☐       The defendant shall surrender to the United States Marshal for this district:

      ☐       at           on

      ☐       as notified by the United States Marshal.

      ☐       The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

         ☐       before 2:00 pm on

         ☐       as notified by the United States Marshal.

         ☐       as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

APPENDIX 14

Case: 23-1449    Document: 14    Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 428 Filed: 03/07/23 Page 3 of 8 PageID #:12831
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Judgment – Page 3 of 8

DEFENDANT: ROBERT SYLVESTER KELLY
CASE NUMBER:  1:19-CR-00567(1)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of:
three (3) years on counts 1s – 3s, 9s, 10s and 12s to run concurrent to each other and to Docket Number 19 CR 286(S-3)-001 EDNY – USDC
Eastern District of New York.

**During the period of supervised release:**

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release
    from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
        The above drug testing condition is suspended, based on the court's determination that you
          pose a low risk of future substance abuse. *(check if applicable)*
4.   You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

APPENDIX 15

Case: 23-1449   Document: 14   Filed: 08/02/2023   Pages: 77
Case: 1:19-cr-00567 Document #: 428 Filed: 03/07/23 Page 4 of 8 PageID #:12832
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case

Judgment – Page 4 of 8

DEFENDANT: ROBERT SYLVESTER KELLY
CASE NUMBER:  1:19-CR-00567(1)

## STANDARD CONDITIONS OF
## SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed report to the court about and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least IO days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours p r week) at a lawful type of employment unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment unless the probation officer· excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

Case: 23-1449   Document: 14   Filed: 08/02/2023   Pages: 77
Case: 1:19-cr-00567 Document #: 428 Filed: 03/07/23 Page 5 of 8 PageID #:12833
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case

Judgment – Page 5 of 8

DEFENDANT: ROBERT SYLVESTER KELLY
CASE NUMBER:  1:19-CR-00567(1)

## SPECIAL CONDITIONS OF
## SUPERVISION

1.  The defendant shall comply with any applicable state and/or federal sex offender registration requirements, as instructed by the probation officer, the Bureau of Prisons, or any state offender registration agency in state where he resides, works or, or is student.

2.  The defendant shall participate in a mental health treatment program, which may include participation in a treatment program for sexual disorders. as approved by the U.S. Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay. As part of the treatment program for sexual disorders, the defendant shall participate in polygraph exan1inations and/ or visual response testing to obtain information necessary for risk management and correctional treatment.

3.  The defendant shall not associate with or have any contact with convicted sex offenders unless in a therapeutic setting and with the permission of the U.S. Probation Department.

4.  The defendant shall not associate with children under the age of 18, unless a responsible adult is present, and he has prior approval from the Probation Department. Prior approval does not apply to contacts which are not known in advance by the defendant where children are accompanied by a parent or guardian or for incidental contacts in a public setting. Any such non-pre-approved contacts with children must be reported to the Probation Department as soon as practicable, but no later than 12 hours. Upon commencing supervision, the defendant shall provide to the Probation Department the identity and contact information regarding any family members or friends with children under the age of 18, whom the defendant expects to have routine contact with, so that the parents or guardians of these children may be contacted and the Probation Department can approve routine family and social interactions such as holidays and other family gatherings where such children are present and supervised by parents or guardians without individual approval of each event.

5.  If the defendant cohabitates with an individual who has minor children, the defendant will inform that other party of his prior criminal history concerning his sex offense. Moreover, he will notify the party of his prohibition of associating with any child(ren) under the age of 18, unless a responsible adult is present.

6.  The defendant shall report to the Probation Department any and all electronic communications service accounts [as defined in 18 U.S.C. § 2510(15)] used for user communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. The defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation of release. The defendant shall permit the Probation Department to access and search any account(s) using the defendant's credentials pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the account(s) to be searched contains evidence of this violation. Failure to submit to such a search may be grounds for revocation of release.

7.  The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(I)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to **a** search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

8.  The defendant is not to use a computer, Internet capable device, or similar electronic device to access any "visual depiction" (as defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct" (as defined in 18 U.S.C. § 2256). The defendant shall also not use a computer, Internet capable device or similar electronic device to view images of naked children. The defendant shall not use his computer to view sexually explicit conduct or visual depictions of naked children stored on related computer media, such as CDs or DVDs, and shall not communicate via his computer with any individual or group who promotes the sexual abuse of children. The defendant shall cooperate with the United States Probation Office's Computer and Internet Management/Monitoring ("CIMP") program. Cooperation shall include, but not be limited to, identifying computer systems (as defined in **18** U.S.C. § 1030(e)(I)), Internet-capable devices, and/or any electronic media capable of data storage the defendant has access to, allowing an initial examination of the device(s), and installation of monitoring software/hardware on the device(s), at the defendant's expense. The monitoring software/hardware is authorized to capture and analyze all data processed by and/or contained on the device, including the geolocation of the device. The Probation Office may access the device and/or data captured by the monitoring software/hardware at any time with or without suspicion that the defendant has violated the conditions of supervision. The defendant may be limited to possessing only one personal Internet capable device, to facilitate the Probation Office's ability to effectively manage and monitor the device. The defendant shall also permit seizure and removal of computer systems, Internet-capable devices, and any electronic media capable of data storage for further analysis by law enforcement or the Probation Office based upon reasonable suspicion that a violation of a condition of supervision or unlawful conduct by the defendant has or is about to occur. Failure to comply with the monitoring, seizure and/or search of any computer systems, Internet-capable devices, and any electronic media capable of data storage may result in adverse action such as sanctions and/or revocation. The defendant shall inform all parties that access a monitored device, that the device is subject to search and monitoring.

9.  The defendant shall refrain from contacting the victims of the offense. This means that he shall not attempt to meet in person, communicate by letter, telephone, email, the Internet, or through a third party, without the knowledge and permission of the Probation Department.

10. Upon request, the defendar1t shall provide the U.S. Probation Department with full disclosure of his financial records, including co-mingled income, expenses, assets, and liabilities, to include yearly income tax returns. With the exception of the financial accounts repo1ted and noted within the presentence repo1t, the defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for

Case: 23-1449     Document: 14          Filed: 08/02/2023     Pages: 77
Case: 1:19-cr-00567 Document #: 428 Filed: 03/07/23 Page 6 of 8 PageID #:12834
ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case

Judgment – Page 6 of 8

DEFENDANT: ROBERT SYLVESTER KELLY
CASE NUMBER:  1:19-CR-00567(1)


either personal or business purposes, without the knowledge and approval of the U.S. Probation Department. The defendant shall cooperate with the Probation Officer in the investigation of their financial dealings and shall provide truthful monthly statements of their income and expenses. The defendant shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Department access to their financial information and records.

11. The defendant shall comply with any possible restitution orders.

APPENDIX 18

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case

DEFENDANT: ROBERT SYLVESTER KELLY
CASE NUMBER: 1:19-CR-00567(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $600.00 | $42,000.00 | $.00 | $.00 | $.00 |

☐ The determination of restitution is deferred until        . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

Restitution of $42,000.00 to:

Pauline

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**. All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the restitution.

☐ the interest requirement for the        is modified as follows:

☐ The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

APPENDIX 19

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case

Judgment – Page 8 of 8

DEFENDANT: ROBERT SYLVESTER KELLY
CASE NUMBER:  1:19-CR-00567(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $        due immediately.

☐ balance due not later than        , or

☐ balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal        (*e.g. weekly, monthly, quarterly*) installments of $        over a period of        (*e.g., months or years*), to commence        (*e.g., 30 or 60 days*) after the date of this judgment; or

**D** ☐ Payment in equal        (*e.g. weekly, monthly, quarterly*) installments of $        over a period of        (*e.g., months or years*), to commence        (*e.g., 30 or 60 days*) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within        (*e.g. 30 or 60 days*) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|

\*\*See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.\*\*

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

APPENDIX 20

Case: 23-1449    Document: 14    Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 1 of 90 PageID #:12903

1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3   UNITED STATES OF AMERICA,      ) Docket No. 19 CR 567
                                    )
 4                       Plaintiff,)
                                    )
 5              vs.                 )
                                    )
 6   ROBERT SYLVESTER KELLY, also   )
     known as R. Kelly,             ) Chicago, Illinois
 7                                  ) February 23, 2023
                        Defendant.) 9:45 o'clock a.m.
 8
                     TRANSCRIPT OF PROCEEDINGS - SENTENCING
 9            BEFORE THE HONORABLE HARRY D. LEINENWEBER

10   APPEARANCES:

11   For the Plaintiff:          HON. JOHN R. LAUSCH, JR.
                                 United States Attorney
12                               BY:  MS. JEANNICE W. APPENTENG
                                      MS. ELIZABETH ROSE POZOLO
13                                    MR. JASON A. JULIEN
                                      MR. BRIAN WILLIAMSON
14                               219 S. Dearborn St., Suite 500
                                 Chicago, Illinois  60604
15
     For the Defendant:          BONJEAN LAW GROUP
16                               BY:  MS. JENNIFER A. BONJEAN
                                      MS. ASHLEY BLAIR COHEN
17                               750 Lexington Avenue, 9th Floor
                                 New York, New York  10022
18
     Also Present:               MR. MICHAEL ALPER, Probation
19
     Court Reporter:             MR. JOSEPH RICKHOFF
20                               Official Court Reporter
                                 219 S. Dearborn St., Suite 1728
21                               Chicago, Illinois  60604
                                 (312) 435-5562
22
                     * * * * * * * * * * * * * * * * *
23
                          PROCEEDINGS RECORDED BY
24                        MECHANICAL STENOGRAPHY
                     TRANSCRIPT PRODUCED BY COMPUTER
25
```

Case: 23-1449    Document: 14        Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 62 of 90 PageID #:12964

62

1  that he lacks remorse.

2          So, with that, your Honor, unless the Court has any

3  questions, that concludes my remarks.

4          THE COURT:  I need to ask your client if he wishes to

5  allocute.

6          Mr. Kelly, would you like to make a statement on your

7  own behalf before I impose sentence?

8          THE DEFENDANT:  Sorry, your Honor, but on advice of

9  my counsel, I would not.

10         THE COURT:  Thank you.

11         THE DEFENDANT:  Thank you.

12         THE COURT:  Any further from either side?

13         MS. APPENTENG:  Nothing from the government, your

14  Honor.

15         THE COURT:  Okay.

16         What's interesting in this case is that this case was

17 filed first and would have gone to trial first but for the

18 fact that the COVID protocols, because we had three defendants

19 and because of distancing requirements, we couldn't try the

20 case until this past fall, where the CDC reduced the

21 distancing requirements from six feet to two feet.  So, the

22 case went ahead in New York, and there was a sentence imposed.

23         And the question -- one of the questions in my mind

24 that I've been thinking about a lot is if the case had gone

25 first here rather than New York, what kind of a sentence would

Case: 23-1449   Document: 14   Filed: 08/02/2023   Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 63 of 90 PageID #:12965

63

1    I have imposed under the facts as I understood them as the

2    jury determined the case.

3           The Guidelines that we've worked out or that I have

4    established at this particular time is 135 to 168 months.  So,

5    of course, that is one of the starting points.  That's not the

6    ending point, of course, because we have to consider the

7    nature and circumstances of the offense and the history and

8    characteristics of the defendant and the other factors that --

9    the purposes of sentencing that we know about that reflect the

10   seriousness of the offense, promote respect for the law,

11   provide just punishment, provide adequate deterrence, and

12   protect the public.

13          The sentence that I would have given probably would

14   have been higher than the Guidelines probably because of some

15   of the points that the government has indicated.  I think that

16   while the jury spoke on the issue of whether he had obstructed

17   justice, there certainly was evidence that I could find by

18   preponderance that he obstructed justice; and, also, as the

19   government pointed out, that the later Guidelines, which would

20   be in current now, would provide for a higher offense level

21   for the actual conduct.

22          So, I have not come to a complete sentence.  But, of

23   course, the elephant in the room, so to speak, is what is he

24   going to do as far as consecutive versus concurrent?  And that

25   is the issue that I'm going to start out with discussing.

APPENDIX 23

Case: 23-1449   Document: 14      Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 64 of 90 PageID #:12966

64

 1   And, then, we'll end up with -- because, basically, it's kind

 2   of irrelevant if -- what I end up sentencing him either way.

 3          So, the question is -- I'm not going to keep

 4   everybody in suspense.  I am going to provide for a

 5   consecutive sentence, but a minimal consecutive sentence of

 6   one year, to add to the New York sentence.  But I want to go

 7   into the reasons for my thinking upon which I base my

 8   decision.

 9          First of all, we start out with the sentence that

10   everybody knows -- at least as far as the judges who get

11   involved and the lawyers who are involved in sentencing --

12   sentencing is to be sufficient, but not greater than

13   necessary.  The purposes of sentencing, which I briefly had

14   mentioned:  Reflect the seriousness of the offense, promote

15   respect for the law, provide just punishment, provide adequate

16   deterrence, and protect the public.

17          Now, we start out, the seriousness of the offense is

18   the nature and circumstances of the offense.  And, of course,

19   everybody agrees that the nature of this offense is horrible,

20   horrific.  Abuse of young girls, sex tapes, tapes being in the

21   public and cannot be -- even though Mr. Kelly's minions spent

22   hundreds and hundreds of thousands of dollars trying to get

23   these tapes back.  And, obviously, they were not able to do

24   so, and they're out there in the public and they can't be

25   removed.  The defendant's actions are seen on the tapes.

Case: 23-1449    Document: 14        Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 65 of 90 PageID #:12967

65

1          The only possible ameliorating is that he didn't,

2    apparently, intend to traffic the tapes.  He certainly was

3    horrendously negligent in how he kept them.  As I remember, I

4    think Lisa Van Allen said that she found them in, I guess, a

5    backpack sitting on the floor, and so she just helped herself

6    to them.  And that started out a rather Keystone Cop kind of

7    operation in which these tapes spread out through the country.

8    And Kelly's minions spent hundreds of thousands of dollars and

9    effort trying to get them back.  They were obviously unable to

10   do so.

11         This was not prepubescent sex child porn, which is a

12   particular type.  And there is -- as I understand it, based

13   upon Dr. Dietz's report, that Mr. Kelly is not a pedophile.

14   But, again, these tapes got out there.  And that's the nature

15   and circumstances of the offense.  And it's horrendous, and

16   everybody agrees with that.  And it's deserving of very, very

17   serious consequences to Mr. Kelly.

18         Now, the history and characteristics, that both sides

19   have gone into, Ms. Bonjean points out that he had a

20   fatherless childhood and he was raised in poverty, alcoholism

21   in the family.  He was subject to what has been -- a nice

22   euphemism -- adverse childhood experiences, another word for

23   sex abuse.  He is marginally illiterate.  He has a learning

24   disability.  His education is minimal.

25         But contrast to that, he's a music genius.  Multiple

APPENDIX 25

Case: 23-1449    Document: 14        Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 66 of 90 PageID #:12968

66

1   Grammy awards.  He wrote music for himself and many other

2   famous musicians.  His song was featured in a movie with

3   Michael Jordan.  All of a sudden -- here's a person working on

4   the street and all of a sudden he ends up with millions of

5   dollars in cash, without anybody really there to explain how

6   he should handle himself.  It is clear he wanted money, they

7   said, you don't need a credit card; here's some cash; just

8   take the cash use it wherever you want to do it, giving him

9   hundreds of thousands of dollars in cash.

10          One of the things that occurred to me during the

11  trial, and we found out when we got the Presentence Report,

12  where was the IRS in all this with this money going out, this

13  cash being -- coming out of the bank hand over fist.  And we

14  found out that, I think, there's $10 million worth of IRS

15  liens against him currently, according to the PSI.

16          He did use some of the money for good.  There is

17  evidence that he gave money to many people who merely -- some

18  of the people didn't ask it.

19          And, then, the final thing is that rather than being

20  a pedophile, he's -- according to the diagnosis, as I

21  understood it, other specific paraphilic disorder, meaning he

22  has a sex -- a problem with controlling his sex, which is

23  pretty obvious from the evidence in this particular case.

24          So, we have a case where -- it's always difficult

25  when you impose a sentence because it's very easy to

APPENDIX 26

Case: 23-1449    Document: 14        Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 67 of 90 PageID #:12969

67

 1  understand.  One of the things that I think we should make

 2  very clear, that under the federal system we have truth in

 3  sentencing.  It's unlike the State of Illinois, where you get

 4  a day for day for good time.  So that if you sentence somebody

 5  to 30 years, they're actually going to serve 15 unless they

 6  really misbehave.  In the federal system, usually you get good

 7  time of around ten percent.  So, a 30-year sentence would be

 8  approximately 27 years, as opposed to 30.

 9          So, we're not talking about -- no matter what I do,

10  Mr. Kelly is not going out the door after today.  He's not

11  going out the door in the next ten years.  He's not going out

12  the door in the next 20 years.

13          And one of the things that we should bear in mind, he

14  is 56 years old currently, as I recall it, from the PSI.  And

15  as Ms. Bonjean pointed out, he has a life expectancy of not a

16  hell of a lot more.  I mean, not -- maybe eight, ten years.

17  Now, of course that's a life expectancy, which is based on

18  statistics, not on -- he may outlive it.  He could not live

19  it.

20          But it's important to note that he is 56 years of

21  age, and he will not complete his sentence from New York until

22  he's at least short -- at least close to 80 years of age.  So,

23  the government is asking for -- to add another 25 years, which

24  assuming that he -- which could be as much as 107 before he

25  gets out.

Case: 23-1449   Document: 14   Filed: 08/02/2023   Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 68 of 90 PageID #:12970

68

1          Now, there's no question that -- well, I suppose

2     there's a theoretic possibility a person could live to be 107,

3     but it would not be anywhere near what we could expect.  So,

4     his chances of surviving, based on statistics, the sentence he

5     already has is not good.  But the sentence that the government

6     is proposing, it would be -- there's no chance.

7          The U.S. Sentencing Commission has indicated that a

8     de facto life sentence is 470 months, but that's based on the

9     average age of a prisoner receiving such a sentence, which is,

10    I believe, the average age is 37.  The median age is 36.  So,

11    you've got a big discrepancy of close to 20 years' difference

12    between what they consider to be a de facto life sentence, 470

13    months, for a 56-year-old person.

14         But a sentence if consecutive, and if I gave the

15    sentence that the government is requesting, you're talking

16    about 660 months, which is a rather substantial -- above

17    what's considered already to be a de facto life sentence.

18         Now, the Guideline manual identifies age as a

19    potentially relevant sentencing factor.  That's 5H1.1.  Life

20    expectancy is a relevant factor for older offenders.  Now, the

21    Seventh Circuit case of U.S. vs. Wurzinger, 467 F.3d 649,

22    stated:  There is a worthy tradition that death in prison is

23    not to be ordered lightly and the probability of a convict who

24    will not live out his sentence should certainly give pause to

25    the sentencing court.  In cases that don't recognize age as a

APPENDIX 28

Case: 23-1449     Document: 14     Filed: 08/02/2023     Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 69 of 90 PageID #:12971

69

1  factor, where it's been refused is for a downward departure,

2  not for an upward departure.

3          Now, we get into the issue of the deterrence and

4  protection of the public, which is a very important issue in

5  sentencing.  And that's been impressed by the government,

6  saying that this man, he should not be allowed out where he's

7  going to be doing exactly what he did before.  And Judge

8  Posner said:  Courts often acknowledge a lower rate of

9  recidivism among older defendants.  That's U.S. vs. Jackson.

10          So, the specific deterrence here would appear to be

11  relatively minimal.  Defendant will be 80 if he's alive when

12  he gets out of the New York sentence, or close to 80.  And his

13  method of operation, his MO, as came out during the course of

14  the trial, was grooming young girls.  Now, he was grooming the

15  young girls when he was in his 20s and he was a millionaire

16  and he was a superstar.  When he gets out in his 80s, there

17  will be few young girls that would be susceptible to his

18  charms as an 80-year-old with no money and no prospects.  80

19  -year-olds are more interested not in grooming young women,

20  but probably in their prostate and their arthritis and the

21  other -- all the factors that go into the aging process.

22          So, anyway, as far as if I was going to sentence Mr.

23  -- I would probably have -- considering all the factors that

24  I've outlined before, I would have probably had a variance

25  upwards from the top end of the Guidelines, which was 168.

Case: 23-1449    Document: 14       Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 70 of 90 PageID #:12972

70

1   Again, I think there was some evidence, justification for the

2   obstruction and some -- and because of the increase in the

3   current Guidelines, so that in all probability, if I was

4   sentencing Mr. Kelly as a result of -- I would probably give

5   him a sentence in the neighborhood of 240 months.

6           So, I will -- it seems to me that under all the facts

7   and circumstances, that is a valid sentence, the 240 months.

8   But I'm going to make -- the only part that's going to be

9   consecutive will be 12 months.  So, the sentence would be 228

10  months concurrent, to be followed by 12 months consecutive.

11  I'll have to work that out on the various counts.  But that

12  would be the sentence.

13          What was the terms of supervised release of Judge

14  Donnelly?  Does anybody know?

15          MS. BONJEAN:  I do, your Honor.

16          THE COURT:  What were --

17          MS. BONJEAN:  Hold on.  I have to pull it up real

18  quick.

19          THE COURT:  Pardon?

20          MS. BONJEAN:  I can pull it up real quick.

21          THE COURT:  Is it much different than what Mr. Alper

22  has suggested?

23          I guess put another way, Ms. Bonjean, have you

24  reviewed the proposed terms of supervised release?

25          MS. BONJEAN:  I have, your Honor.

Case: 23-1449   Document: 14   Filed: 08/02/2023   Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 71 of 90 PageID #:12973

71

 1          THE COURT:  I think -- well, it's relevant -- it's

 2  not particularly relevant.

 3          Are there any that you object to?

 4          MS. BONJEAN:  I did not see any, your Honor.

 5          THE COURT:  Is the government satisfied with the

 6  proposed terms of supervised release?

 7          MS. APPENTENG:  I'm sorry, your Honor?

 8          THE COURT:  The terms of supervised release that were

 9  suggested by Mr. Alper.

10          MS. APPENTENG:  Yes, your Honor, those are acceptable

11  to the government.

12          THE COURT:  Okay.

13          So, I will make them concurrent with the terms of

14  supervised release imposed by Judge Donnelly.

15          I assume she did have a term of supervised release in

16  the sentence; did she not?

17          MS. BONJEAN:  Yeah, she did.

18          THE COURT:  Okay.

19          Now, whether or not that can be done --

20          Mr. Alper, is that something that can be done or is

21  that just total confusion if there's differences?

22          MR. ALPER:  I believe that there can be different --

23          THE COURT:  Pardon?

24          MR. ALPER:  I do believe that there can be different

25  sets of conditions.  He has the New York conditions and the

Case: 23-1449    Document: 14       Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 72 of 90 PageID #:12974

72

1    Chicago --

2            THE COURT:  I said making them concurrent.  It's

3    probably irrelevant anyway based on the length of the

4    sentence.

5            MS. BONJEAN:  She ordered five years' supervised

6    release, your Honor.

7            THE COURT:  All right.

8            Why don't we just leave it that way.  I just won't --

9            Do I have to impose a term of supervised release?

10           MR. ALPER:  Yes, your Honor.

11           THE COURT:  Okay.

12           Why don't I just impose a five-year concurrent one

13   under the same -- is there any objection to that, if I make

14   them under the same terms?

15           MR. ALPER:  Your Honor, I will note the maximum term

16   of supervised release is three years.

17           THE COURT:  Three years?  Okay.

18           Three years concurrent to the five years, then.

19           And I'll waive a fine because of inability to pay.

20           So, the sentence is 240 months -- 228 months

21   concurrent to the New York sentence, 12 months consecutive to

22   the New York sentence.  No fine.  Term of supervised

23   release -- what did I say, that I wasn't going to impose --

24           MS. BONJEAN:  Three, right?  Three concurrent.

25           THE COURT:  Three years concurrent under the same

Case: 23-1449    Document: 14        Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 73 of 90 PageID #:12975

73

```
 1  terms as imposed by Judge Donnelly.

 2          And, also, how many counts is the hundred-dollar

 3  special assessment?  For how many counts?

 4          MS. APPENTENG:  Six, your Honor.

 5          THE COURT:  Six.  So, $600 special assessment.

 6          Mr. Kelly, you're entitled to appeal the sentence

 7  imposed.  Do you understand that, sir?

 8          THE DEFENDANT:  Yes, sir.

 9          THE COURT:  I'm led to believe by Ms. Bonjean that

10  you intend to appeal.

11          And, Ms. Bonjean, you will take care of filing the

12  notice of appeal for him; is that correct?

13          MS. BONJEAN:  Yes, your Honor.

14          THE COURT:  And, Mr. Kelly, if you can't afford an

15  attorney while on appeal, one will be appointed to represent

16  you.

17          Do you understand that, sir?

18          THE DEFENDANT:  Yes, I do, your Honor.

19          MR. ALPER:  Your Honor, two things.  One, I just

20  checked and I did misspeak.  There is no mandatory supervised

21  release --

22          THE COURT:  All right.

23          MR. ALPER:  -- that must be imposed.  There's no

24  minimum term.

25          THE COURT:  Okay.
```

APPENDIX 33

Case: 23-1449    Document: 14    Filed: 08/02/2023    Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 74 of 90 PageID #:12976

74

```
 1              MR. ALPER:  My other question would be if you do --
 2              THE COURT:  Just to make it easy, why don't we just
 3   not impose a term of supervised release.
 4              MR. ALPER:  The only concern with that, your Honor,
 5   would be if there is a -- if something happens with the New
 6   York case and there is an appeal, then there would be no
 7   supervised release to follow in this case --
 8              THE COURT:  Well --
 9              MR. ALPER:  -- if for some reason that conviction was
10   overturned or case vacated.  I do believe that a term would be
11   appropriate in this case to run concurrent.
12              THE COURT:  All right.  I'll make it three years term
13   of supervised release under the same terms as imposed by Judge
14   Donnelly.
15              MS. BONJEAN:  Concurrent, your Honor?
16              THE COURT:  Pardon?
17              MS. BONJEAN:  Concurrent?
18              THE COURT:  Concurrent, yes.  So, in the event that
19   the sentence is vacated.
20              Now we proceed to the issue of restitution.  I have a
21   few questions that I want to raise on the issue of
22   restitution.
23              What did Judge Donnelly provide for restitution?  Did
24   she issue an order of restitution?
25              MS. BONJEAN:  Yes, your Honor, she did.  And we did
```

Case: 23-1449   Document: 14   Filed: 08/02/2023   Pages: 77
Case: 1:19-cr-00567 Document #: 436 Filed: 03/17/23 Page 90 of 90 PageID #:12992

90

1          MS. APPENTENG:  Yes, your Honor.  The government

2    moves to dismiss the forfeiture allegation in the indictment.

3          THE COURT:  All right.  Without objection, the

4    forfeiture is dismissed.

5          MS. APPENTENG:  Nothing further from the government,

6    your Honor.

7          MS. BONJEAN:  Nothing from the defendant.  Thank you,

8    your Honor.

9                     *    *    *    *    *

10

11   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

12

13
     /s/ Joseph Rickhoff                     February 28, 2023
14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25