No. 23-1449

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ROBERT SYLVESTER KELLY

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION
Case No. 1:19 CR 00567
The Honorable Judge Harry D. Leinenweber

---

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## ROBERT SYLVESTER KELLY

---

JENNIFER BONJEAN
ASHLEY COHEN
BONJEAN LAW GROUP, PLLC
750 Lexington Avenue, 9th Floor
New York, NY 10022
(718) 875-1850

Chicago Office:
BONJEAN LAW GROUP, PLLC
53 W. Jackson, Blvd. Ste. 315
Chicago Illinois 60604

*Attorney(s) for Defendant-Appellant*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**…………………………………………………… ii

**ARGUMENT**

I.    Defendant's Convictions for Sexual Exploitation and Inducement of a Child Must Be Reversed Where the Charges Were Brought Outside the Applicable Statute of Limitations………………………………………… 1

II.    The Trial Court Abused Its Discretion When It Denied Defendant's Motion to Sever the Inducement Counts (Counts Ten through Thirteen) from the Child Pornography Counts Related to Jane (Counts One through Three). …………………………………………………………… 5

III.    Defendant's 240-Month Above-Guidelines Sentence Was Both Procedurally and Substantively Improper………………………………… 7

**CONCLUSION**……………………………………………………………. 15

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)** …………………………………………………... 16

**CERTIFICATE OF SERVICE**…………………………………………… 17

# TABLE OF AUTHORITIES

**Cases**

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) .......................................... 3, 4, 5

*Stogner v. California*, 539 U.S. 607 (2003)....................................................... 3

*Toussie v. United States*, 397 U.S. 112 (1970) .............................................. 3

*United States v. Coe,* 220 F. 3d 573 (7th Cir. 2000)....................................... 14

*United States v. Diehl*, 775 F. 3d 714 (5th Cir. 2015).................................... 13

*United States v. Gentile*, 235 F. Supp. 3d 649 (D.N.J. 2017) .................................. 3, 4

*United States v. Gibson,* 490 F. 3d 604 (7th Cir. 2007) ....................................... 1, 2, 3

**Statutes**

18 U.S.C. § 3290 ..................................................................................... 1

18 U.S.C. § 3296 ..................................................................................... 2

18 U.S.C. § 3742 ..................................................................................... 5

## REPLY ARGUMENT

**I.     Defendant's Convictions for Sexual Exploitation and Inducement of a Child Must Be Reversed Where the Charges Were Brought Outside the Applicable Statute of Limitations.**

The government contends that the 2003 amendment to 18 U.S.C. § 3283 that extended the statute of limitations for offenses involving the sexual or physical abuse of a child does not violate the *ex post facto* clause. It argues that this Court's holding in *United States v. Gibson,* 490 F. 3d 604 (7th Cir. 2007) is dispositive of the issue and further urges this Court to adopt the reasoning set forth in *United States v. Maxwell,* 534 F. Supp. 3d 299 (S.D.N.Y. 2021)[1].

At the outset, *Gibson* is distinguishable from the case at bar where the defendant in *Gibson* was initially indicted within the applicable statute of limitations and therefore put on timely notice of the charges and the need to defend them. In *Gibson,* the defendant was indicted in January 2001 for conduct that occurred in June 1996. *Id.* at 606. The statute of limitations at the time the conduct was committed was five years. As a result, the indictment was timely filed. After indictment, the defendant fled the jurisdiction to avoid prosecution and was arrested in Belize in May 2001. *Id.* The statute of limitations was tolled while defendant was on the run pursuant to 18 U.S.C. § 3290, a statute that was in effect at the time of his indictment. *Id.* at 608.

---

[1]     The District Court's decision in *Maxwell* is currently pending review before the United States District Court for the Second Circuit Court of Appeals. *United States v. Maxwell,* App. Ct. No. 22-1426.

In January 2002, defendant pled guilty to one count of conspiracy and was sentenced to a term of 262 months' imprisonment; the remainder of the indictment was dismissed. *Id*. at 606. The defendant appealed. This Court reversed the conviction and sentence where the plea agreement was defective; the mandate issued on February 26, 2004. *Id*. at 607. Pursuant to 18 U.S.C. § 3296, the government had sixty days to move to reinstate the counts of the indictment that were dismissed pursuant to the plea agreement. The government so moved and the charge were reinstated on July 14, 2005. *Id*. Defendant argued that three of the reinstated counts were time barred. *Id*. at 608. The government claimed that counts were not time-barred, because the statute of limitations was extended by 18 U.S.C. § 3296 which became effective on November 2, 2002. *Id*.

This Court found that application of the statute that served to extend the statute of limitations did not violate the defendant's *ex post facto* rights, noting that it is well settled law that applying procedural statutes that effectively enlarge limitations periods does not violate the *ex post facto* clause so long as the statute is passed before the given prosecution is barred. *Id*. at 609.

Relying on *Gibson,* the government here contends that because the 2003 amendment was passed during a period of time that a prosecution could have been brought against Defendant Kelly, the *ex post facto* clause is not offended by Kelly's prosecution on charges dating back to the late 1990s. *Gibson* is inapt where the defendant there was initially indicted within the statute of limitations period that existed at the time of the alleged conduct. In contrast, the defendant here was *not*

indicted within the statute of limitations period that existed at the time of the charged conduct.

The government ignores the general canon articulated by the United States Supreme Court in *Toussie v. United States,* 397 U.S. 112, 115 (1970) that criminal statutes of limitations are to be interpreted in favor of repose. *see also, United States v. Gentile,* 235 F. Supp. 649, 654 (D.N.J. 2017). The purpose of criminal statutes of limitations is to "limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of criminal acts." *Id.* There is a presumption against retroactive legislation which is deeply rooted in Supreme Court jurisprudence. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994). "[T]his time-honored presumption must be applied unless Congress *has clearly manifested its intent to the contrary. Hughes v. Aircraft Co., v. U.S. ex rel. Schumer,* 520 U.S. 939, 946 (1997).

As argued in Defendant's opening brief, Congress evinced an intent that § 3283 apply prospectively when it employed prospective language and rejected a version of the bill that incorporated language that allowed for retroactive application of the amendment - inapposite to the statute at issue in *Gibson.* The government disagrees, arguing that Congress only intended to excise language that would serve to *revive* expired claims as prohibited in *Stogner v. California,* 539 U.S. 607 (2003). Notably, *Stogner* had not been decided at the time the 2003 amendment passed thus it is far from clear that Congress was *only* concerned about retroactive application of a statute that revived expired claims although the revival of expired

claims is of greater constitutional concern. Indeed, retroactive means application to

any *past* conduct, not merely when it revives stale claims. Because the amendment

uses prospective language, it seems clear that Congress intended to avoid *all*

retroactive application of the amendment, that is, it sought to avoid application of

the amendment to all conduct that preceded enactment of the amendment not just

to those claims that had expired.

Even if this Court concludes that application of the amendment does not

violate the *ex post facto* clause, its application creates impermissible retroactive

effects. In *Gentile,* for example, the District Court concluded that a six-yar statute of

limitations created by the Dodd-Frank law was inapplicable to crimes allegedly

committed by the defendant because the Supreme Court does not favor retroactive

statutes of limitation and there was no clear congressional intent for the statute to

apply retroactively. *Gentile,* 235 F. Supp. at 654. The court reached this exclusion

notwithstanding that application of the extended statute of limitations would not

have run afoul of the *ex post facto* clause.

In short, the Ex Post Facto clause is not the final word on whether a statute

is impermissibly retroactive as it runs afoul of familiar considerations of fair notice,

reasonable reliance, and settled expectations. Indeed, *Landgraf* makes clear that

certain statutes must be presumed (absent a clear statement from Congress) to

apply only prospectively.

> But while the constitutional impediments to retroactive civil
> legislation are now modest, prospectivity remains the appropriate
> default rule. Because it accords with widely held intuitions about how
> statutes ordinarily operate, a presumption against retroactivity will

4

generally coincide with legislative and public expectations. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. *Id.* at 272-73.

Defendant maintains that section 3283 by its language and its legislative history was intended to apply prospectively - surely there is no word from Congress that the statute was intended to apply retroactively. Thus, the inquiry ends there making all charges against the Defendant time barred. Even if this Court reaches step two of the *Landgraf* the analysis, it should decide against retroactive application of the amendment for the foregoing reasons.

II. **The Trial Court Abused Its Discretion When It Denied Defendant's Motion to Sever the Inducement Counts (Counts Ten through Thirteen) from the Child Pornography Counts Related to Jane (Counts One through Three).**

The government minimizes the prejudice suffered by the Defendant as a result of the joinder of the inducement counts related to Nia and Pauline with the remaining counts related to Jane. While much discretion is owed the District Court, there simply is no question that Defendant had virtually no shot at defending the claims related to Nia and Pauline in light of the joinder of those counts to the counts related to Jane. Where the jury saw highly inflammatory (and arguably cumulative) video evidence related to Jane, the jury unquestionably did not examine Nia and Pauline's testimony through the same lens it would have absent the evidence introduced as to Jane. Without the video-recorded evidence, the government would

have been left with 25-year-old testimony from two women, one of whom describes a single occasion of groping for which she later sued Defendant and received $500,000 and the other who spent decades denying a prohibited sexual relationship with the Defendant only to claim one existed upon promises of restitution by the government. Simply put, Defendant had strong defenses to the allegations by Nia and Pauline. Those defenses were entirely overshadowed by video evidence of Defendant's sexually explicit conduct with Jane.

The government argues that Defendant could not have suffered prejudice because the jury acquitted him of two other inducement counts related to Brittney and Tracy. Brittney did not testify so that is hardly a fair comparison. As to Tracy, admissions from her own prior lawsuit against the Defendant showed that she was simply not under the age of 18 at the time she alleged abuse by the Defendant. Tracy's testimony does underscore an important point, namely that like Lisa Van Allen, women have been willing to fudge the age at which they had sexual contact with the Defendant either for pecuniary gain or at the urging of the government, making it all the more critical in some cases that Defendant be able to testify in his defense.

Defendant's defense as to Nia required him to testify about the nature of his contact with Nia at his studio and his knowledge about her age. No one could testify to that except him. Similarly, Defendant's defense as to Pauline required him to explain his relationship with Pauline that lasted decades but which did not involve sexual contact when she was under the age of 17. Defendant had no choice to forego

6

giving that testimony in order to maintain his right against self-incrimination in connection with other counts in the indictment. Indeed, this is precisely the scenario that justified severance because Defendant would have been coerced into testifying on a count upon wish he wished to remain silent in order to give testimony concerning counts ten and twelve.

## III. Defendant's 240-Month Above-Guidelines Sentence Was Both Procedurally and Substantively Improper.

The parties agree that the District Court correctly calculated the applicable guidelines ranges at 135 to 168 months. However, the government maintains that the District court provided sufficient justification for its substantial upward variance of 72 months due to "defendant's obstructive conduct" and the fact that "modern Guidelines provide for a higher offense level for sexual exploitation of children." (Gov. Br. at 42)

As argued in his opening brief, Defendant maintains that the District Court judge gave little more than a polite nod to the Guidelines before quickly deciding that he believed the appropriate sentence was 20 years' imprisonment. The District Court committed procedural error by concluding without a well-articulated basis that Defendant should be sentenced well-above the Guidelines range.

The government insists that it presented ample evidence that Defendant obstructed justice and received child pornography or conspired to receive child pornography even though Defendant and his co-defendants were acquitted of *all* such conduct. While acquitted conduct can be considered in sentencing so long as it

is proven by a preponderance of the evidence, the government's evidence fell far short of even this lower standard. The government does not even bother to point this Court to any record cites of testimony that substantiates its now disproved charges that Defendant obstructed justice in connection with his 2008 prosecution. Not letting the facts get in the way if its argument, the government continues to repeat a narrative that was overwhelmingly rejected by the jury and simply asks this Court to assume that its proofs satisfied the lower preponderance standard.

A fair review of this record shows that the jury in this case did not merely acquit all of the Defendants of the obstruction and receipt counts because the government came up short. Rather, the jury acquitted the Defendants based on the government's own evidence, in conjunction with unrefuted defense evidence, that proved a very different set of circumstances that those charged in the indictment. Defendant is left to speculate what "acquitted conduct" the District Court found by a preponderance of the evidence standard where it failed to make precise findings. Defendant should not have to speculate as to what facts the District Court relied on when imposing an above-guidelines range, particularly when the jury acquitted the Defendant and his co-defendants of the conduct that allegedly supports the above-guidelines range.

The government adamantly insists that it showed that Defendant obstructed his 2008 state court prosecution by "intimidating and bribing witnesses" and "by seeking to retrieve and conceal the child pornography videos" that could support

8

charges against him. (Gov. Br. at 44) Notably absent from the government's argument is any record support for its contentions.

First, the District Court judge made no finding by a preponderance of the evidence that Defendant "intimidated" or "bribed" witnesses. Citing to one paragraph of its sentencing memorandum (R. 418 at 30), the government insists that Defendant "intimidated" and "bribed" Jane. But Jane never testified consistent with this theory which is precisely why Defendant was found not guilty of this charge. Jane testified at length that she began a sexual relationship with the Defendant when she was 14 and that the relationship lasted 12 years. (Tr. R. 870) Defendant was charged and convicted of four separate counts of the indictment related to his sexual abuse of Jane. (Count 1-4 and 9) However, Jane never testified that Defendant bribed, coerced, or forced her in any way to obstruct Defendant's 2008 prosecution, including by giving false testimony to the grand jury.

Quite the opposite, Jane testified that after the videotape depicting her sexual contact with the Defendant came to light, Jane and her family met in Oak Park to discuss the situation. (Tr. R. 927) Jane's father told Defendant he "couldn't help him" and Defendant encouraged Jane and her family to decide how they wanted to handle it. (Tr. R. 928) Jane maintained that Defendant was apologetic, did not threaten her or her parents, and was deeply remorseful. (Tr. R. 927-28) Jane, who was at that point 17 years old and therefore of legal consenting age in Illinois, wanted to continue her relationship with the Defendant, wanted to protect him, and did not want be part of a prosecution for her own highly personal reasons.

(Tr. R. 928) Jane and her parents had their own counsel when they were interviewed by law enforcement. (Tr. R. 931) Jane also wanted to protect her parents who had been subject to a DCFS investigation and had their own reasons for not wanting to cooperate with the state court investigation. (Tr. R. 932-933)

For her part, Jane's mother adamantly denied that she took money from the Defendant to lie before the grand jury in the state prosecution. (Tr. R. 1283) No witness testified that Defendant paid Jane, her family, or anyone money not to cooperate with the 2008 prosecution. Although Defendant lended modest financial assistance to Jane over the years (following their 12 years relationship), Jane denied that any such payments had to do with an effort to buy her silence. Indeed, when the United States Attorney's office began reinvestigating the case in 2019, messages between the Defendant and Jane show *no* effort on Defendant's part to influence her in any way, and she denied that he made any effort to do so. In short, the record is devoid of evidence that Defendant "intimidated" or "bribed" any witnesses either in connection with the 2008 prosecution or the instant one, and the District Court made no such finding. Accordingly, this factual basis cannot justify the significant above-guidelines sentence.

Without record cite, the government insists that it presented sufficient proof that Defendant attempted to retrieve and conceal child pornography to obstruct his 2008 prosecution. The government argues that the District Court made such a finding, but his comments are far from clear and are mistaken in any event. To be specific, the District Court judge acknowledged that Kelly did not apparently intend

10

to traffic any sexually explicit material but stated that he was negligent in how he maintained the material. The District Court then casually noted, "[A]s I remember, I think Lisa Van Allen said that she found [the tapes] in a backpack" and that "started out a rather Keystone Cop kind of operation" and "Kelly's minions spend hundreds of thousands of dollars and effort to try to get them back. They were obviously unable to do so." (App. 24)

The government points to these remarks as factual findings by the District Court that Defendant engaged in conspiracy to receive child pornography or receipt of child pornography. These vague remarks do not provide a sound factual basis for the upward variance based on acquitted conduct and are not supported by the record. The District Court generally remembered Van Allen's testimony, but seemingly forgot that the evidence showed that the tape Van Allen stole from Defendant's backpack did not contain child pornography which is why Defendant was acquitted of Count 4 of the indictment. Specifically, Van Allen testified that she sent the stolen tape to her paramour Keith Murrell, also a government witness. (Tr. R. 2082) Van Allen testified that she later learned through Murrell that a prominent television host Kimora Lee Simmons was interested in buying the tape and the two schemed to extort money from Defendant for the return of the tape. (Tr. R. 2089-90).

Putting aside the unlikelihood that a media outlet would buy child pornography, Murrell testified that Van Allen sent him the tape in the early 2000s and asked him to hold it for her. (Tr. R. 2198; 2201) The tape depicted Defendant

11

engaged in sexual activity with Van Allen and another person. (Tr. R. 2200) Murrell

testified that he viewed the tape and it looked like a "regular threesome." (Tr. R

2240) Murrell never suggested that the tape appeared to contain child pornography.

After Van Allen and Murrell extorted Defendants, Murrell eventually surrendered

the tape to co-defendant McDavid in exchange for payment. The tape was then

provided to Defendant's criminal defense attorney Ed Genson who reviewed the

tape with his assistant Ronald Winters and concluded that it was a tape depicting

Defendant with another woman (Lisa Van Allen) and Defendant's wife. Notably.

Mr. Genson has never been accused of receiving child pornography.

Murrell's testimony was corroborated by testimony from Ronald Winters, Ed

Genson's personal assistant during the relevant time period. Winters testified that

in and around 2007 he was aware of videotapes being brought into Genson's office

related to Mr. Kelly. (Tr. R. 2825) Mr. Genson had an investigator who would bring

them in. (*Id.*) This happened on six or seven times. (*Id.*) Winters would assist

Genson with reviewing the tapes and on each and every occasion the tapes that

were brought to Genson involved sexual activities with women who did not appear

to be underage. (Tr. R. 2831) Winters also recounted a time when co-defendant

McDavid brought in a videotape in 2007 - the tape McDavid recovered from Lisa

Van Allen and Keith Murrell. (Tr. R. 2832) The tape depicted Mr. Kelly having sex

with two women, one of whom appeared to be his wife. (Tr. R. 2833) According to

Van Allen, she was the other person in that tape, meaning the tape did not contain

12

child pornography consistent with testimony from government witness Murrell and defense witness Winters.

The government fails to back up its claim with record evidence that the District Court found by a preponderance of the evidence that Defendant committed the "acquitted conduct" of receipt of child pornography or conspiracy to receive child pornography. The government's evidence did not even persuade the jury that the Defendants had conspired to receive child pornography, reflecting a resounding rejection of the government's theory of the case. For his part, the District Court judge recalled evidence of the wild goose chase for tapes, but seemingly forgot or overlooked that the evidence showed that the tapes recovered by McDavid were not sexually explicit. Regardless, the District Court's comments were not sufficiently specific to justify the above-guidelines sentence. If the District Court intended to make alternative factual findings based on a lower standard of prove as the basis for a significant upward variance, it had an obligation to point to the proof in the record that supported those findings.

The District Court also noted that a 20-year sentence was appropriate because the current Guidelines "would provide for a higher offense level for the actual conduct." The government argues that the District Court was permitted to consider the current Guidelines in fashioning its above-guidelines sentence. Defendant adamantly disagrees.

Relying on the current Guidelines as a basis for a significant upward departure without identifying any specific factors that were not contemplated by

13

the statute in effect at the time of the conduct is no different than directly applying the current Guidelines - a clear *ex post facto* violation. Without authority, the government contends that District Court was permitted to "consider modern penalties" when sentencing Defendant to an above-guidelines range. Not so.

This Court in *United States v. Coe,* 220 F. 3d 573, 578 (7th Cir. 2000) and other federal circuit court have found that there is no *ex post facto* violation for a district court to use amendments to the Federal Sentencing Guidelines that occurred after the commission of the offense as a rationale to depart about the sentencing guidelines range. The *Coe* Court held that "a court may interpret the Commission's later addition of an aggravating element as a sentencing factor as evidence that a previous version of the Guidelines did not adequately consider *that factor* in the sentencing scheme." *Id.*

This Court did *not* hold that a District Court may simply "consider modern penalties" in a general fashion to justify an upward departure. This approach would "gut" the prohibitions imposed by the *ex post facto* clause, a concern that this Court noted in *Coe.* Here, neither the District Court not the government can point to any specific amendment or aggravating circumstance that was *not* contemplated by the applicable version of the Guidelines. That current Guidelines are generally more punitive cannot serve as a basis for sentencing the Defendant to an above-Guidelines sentence without offending the *ex post facto* clause.

14

## CONCLUSION

For the foregoing reasons, Defendant's convictions must be reversed.

Alternatively, Defendant's convictions at to counts ten and twelve must be vacated

and remanded for a new trial. Lastly, Defendant is entitled to a new sentencing

hearing.

Respectfully Submitted,

/s/ JENNIFER BONJEAN
Bonjean Law Group, PLLC.
750 Lexington Ave, 9th Floor
New York, NY 10022
Tel: (718) 875-1850
Fax: (718) 230-0582
jennifer@bonjeanlaw.com

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned, counsel of record for the Defendant-Appellant, Robert S.

Kelly, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P.

Rule 32(a)(7) for a brief produced with a proportionally spaced font.

The length of this brief is 3,759 words.

Dated: February 5, 2024                     Respectfully Submitted,

                                            /s/ JENNIFER BONJEAN
                                            Bonjean Law Group, PLLC.
                                            750 Lexington Ave, 9th Floor
                                            New York, NY 10022
                                            Tel: (718) 875-1850
                                            Fax: (718) 230-0582
                                            jennifer@bonjeanlaw.com

## <u>CERIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 5, 2024, the Reply Brief of Defendant-Appellant Robert Sylvester Kelly was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

Dated: February 5, 2024                    Respectfully Submitted,

<div style="margin-left: 50%;">

<u>/s/ JENNIFER BONJEAN</u>
Bonjean Law Group, PLLC.
750 Lexington Ave, 9th Floor
New York, NY 10022
Tel: (718) 875-1850
Fax: (718) 230-0582
jennifer@bonjeanlaw.com

</div>